UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.: 1:12-cr-184 (RJL) |
| | ) | |
| ALFREDO BELTRAN-LEYVA, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION FOR A COMPLEX CASE DESIGNATION AND TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

### I.  Introduction

The Government respectfully submits this motion to have the above-captioned matter designated as a complex case, as well as exclude time from the calculation of the date by which the above-named Defendants must be tried pursuant to the provisions of the Speedy Trial Act, 18 U.S.C. § 3161 for a reasonable time before proceeding to trial.  As set forth herein, the Speedy Trial Act specifically authorizes the Court to exclude any period of delay resulting from a continuance of the trial date granted for the ends of justice because of the complexity of the case. See 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii).

### II.  Procedural History

The related indictments in this case are the product of an extensive and long term and ongoing investigation conducted by the Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), and Homeland Security Investigations ("HSI") that revealed a large-scale drug trafficking organization ("DTO"), known as the Beltran Levya DTO, based in Sinaloa, Mexico.  If this matter were to proceed to trial, the Government intends to prove that the Defendant was a participant in a conspiracy that spanned over a decade and was truly hemispheric in nature, extending from Colombia all the way to the United States.

The Defendant is named in an Indictment filed on August 24, 2012, which charges the Defendant with a conspiracy to distribute five kilograms or more of cocaine, fifty grams or more of methamphetamine, one kilogram or more of heroin, and one thousand kilograms or more of marijuana for importation into the United States, in violation of 21 U.S.C. §§ 959, 960 and 964.

On January 28, 2008 the Defendant was arrested by the Mexican Army. Following his arrest, the Defendant was extradited to Washington, D.C. on November 15, 2014. The Defendant made his initial appearance before U.S. Magistrate Judge Alan Kay on November 17, 2014.

The Government is in the process of compiling discovery from several jurisdictions and plan to produce Rule 16 discovery to the Defendant including hundreds of pages of reports, photographs, and videos in the coming weeks.[1] On November 21, 2014, the Court conducted a status hearing where counsel of record was determined and the Defendant was ordered detained pending trial. The Court has set a further status hearing for December 9, 2014 at 11:30 a.m.[2]

### III. Legal Analysis

**A. A Trial Date Should be Set Outside the Normal Speedy Trial Calculation Due to the Complexity of This Case**

The Government moves for a complex case designation pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii) due to the number of related defendants, one of whom is in custody awaiting extradition from Mexico, the complexity of the international narcotics

---

[1] As the Government noted during the status conference conducted on November 21, 2014, the Government anticipates that the volume of discovery will grow once further evidence is received from other districts and foreign countries.

[2] On November 5, 2014, the Government filed an under seal Motion to Relate / Transfer this matter to Judge Howell who is presiding over three related cases charging five related defendants. Two of the three cases remain under seal. Of the five related defendants, one is in custody pending trial, one has been arrested in Mexico and is pending extradition and three remain fugitives. The Court indicated that it will rule on the Government's Motion to Relate / Transfer at the next status hearing.

trafficking conspiracy charged, the volume of evidence, the majority of which is in a foreign language, and to allow the parties a reasonable amount of time to prepare for the trial.

The Speedy Trial Act authorizes the Court to effectively toll the seventy-day trial period for any period of time by granting a "continuance on the basis of [the Court's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In determining whether to grant a continuance, the Court must consider, among other factors:

> [w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits [prescribed by the statute].

18 U.S.C. § 3161(h)(7)(B)(ii). This District has previously designated an international narcotics conspiracy case as complex based upon several defendants. See United States v. Shaw, 510 F.Supp.2d 148, 152 (D.D.C. 2007) (designating a case complex involving an international narcotics conspiracy against seven indicted defendants involved in a seven year conspiracy). It has further held that under 18 U.S.C. § 3161(h)(8)(A), the court may, on its own motion, grant a continuance that has the effect of tolling the speedy trial clock upon a finding that the "ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial." Id. at 152.

In evaluating the complexity of a case as a basis to grant a continuance under 18 U.S.C. § 3161(h)(7)(B)(ii), this District has previously designated international narcotics conspiracy cases as complex based upon the volume of Spanish-language documents that must be translated into English, extensive wiretap evidence requiring translation, foreign witnesses requiring international travel arrangements, and numerosity of defendants. See e.g., United States v. Parga-

3

Rivas, 689 F. Supp. 2d 25, 28 (D.D.C. 2009); United States v. Archbold-Manner, 577 F. Supp. 2d 291, 292 (D.D.C. 2008) (finding the case to be complex based largely on the 10,000 Spanish language documents that were not translated and too voluminous for defense counsel to review before the scheduled trial date, extensive wiretap evidence that must be transcribed and translated from Spanish and Patois into English, physical evidence that was tested by foreign chemists, and the large number of defendants requiring parsing documentary evidence for each defendant.) Furthermore, this Circuit recently held in a case involving an international narcotics conspiracy with multiple defendants, "hundreds of hours of wiretaps (many in Spanish)," and "the absence of certain defendants still awaiting extradition" that "the complexity of the case made a continuance appropriate." United States v. Rice, 746 F.3d 1074, 1078-79 (D.C. Cir. 2014); see also United States v. Lopesierra-Gutierrez, 708 F.3d 193, 203-05 (D.C. Cir. 2013) cert. denied, 134 S. Ct. 330, (2013) (upholding tolling in international narcotics conspiracy given determination of complexity of case when case involved extradition of numerous defendants, collection and translation of foreign evidence, and coordination with foreign witnesses, finding those aspects were "all serious obstacles to a quick resolution"); United States v. Zaitar, 858 F. Supp. 2d 103, 109 (D.D.C. 2012) (Collyer, J.) (finding the case, involving two defendants charged with conspiring to traffic narcotics into the United States, to be a complex case due in part to the relevant documents and conversations on wiretaps being in foreign languages that required translation to be of value to English speakers);

Further, in an international drug conspiracy involving three co-defendants, United States v. Parga-Rivas, 689 F.Supp. 2d 25 (D.D.C. 2009) (Collyer, J.), Judge Collyer held:

> The evidence in this case is in one or more foreign languages and both written and oral (wiretapped) evidence must be translated into English before it can be of use to either the defense or the prosecution. Witnesses and other pieces of evidence

> must be brought to the United States for trial, which will require significant international arrangements. It is entirely unreasonable to expect defense counsel to absorb the evidence, share it with his client, consider it so as to provide effective advice, and then determine with Mr. Parga-Rivas how they want to proceed all within seventy days. It is entirely unreasonable, in fact, to expect the Government to produce fully translated copies of the extensive evidence within seventy days for the defense to even begin its consideration and evaluation. This conclusion is within the normal precedent for application of this provision of the Speedy Trial Act. See United States v. Brooks, 697 F.2d 517 (3rd Cir.1982) (9 defendants and 4 counts made the case complex); United States v. Al-Arian, 267 F.Supp.2d 1258 (M.D.Fla. 2003) (19 months continuance based on 21,000 hours of recorded conversations in Arabic, hundreds of boxes of commentary evidence, and voluminous foreign law enforcement materials).

Parga-Rivas, 689 F. Supp.2d at 28.

Similar to those cases, this case should be designated as complex due to the volume of Spanish language documents requiring translation. Indeed, the Government anticipates introducing at trial documentation related to seizures in Mexico and other foreign countries, as well as ledgers from an accountant for a Colombian source of supply that are in the Spanish language and will require translation. Further, the Government anticipates receiving further documentation from other districts in the United States and foreign countries, that will also be in the Spanish language and require translation.

The Government anticipates that the evidence at trial will show that the Defendant was part of a larger, complex international narcotics conspiracy that spanned decades. The object of the conspiracy was to import narcotics, namely cocaine, heroin, methamphetamine, and marijuana, into the United States. The evidence will demonstrate that the Defendant worked with co-conspirators (some of whom are charged in the related indictments) within the Beltran Leyva Drug Trafficking Organization ("DTO") to traffic narcotics into the United States. The Government anticipates that the evidence will show the DTO had been working with the Sinaloa

Cartel since the 1990s where it existed as an organized crime syndicate founded upon longstanding relationships between Mexico's major drug trafficking kingpins. Further, the evidence will show that the DTO operated through cooperative arrangements and close coordination with South American cocaine sources of supply. Through a network of corrupt police and political contacts, the DTO directed a large-scale narcotics transportation network involving the use of land, air and sea transportation assets, shipping multi-ton quantities of cocaine from South America, through Central America and Mexico, and finally into the United States. The evidence is also anticipated to show that the DTO was not only responsible for transporting multi-ton quantities of cocaine from South America, but also diversified into trafficking heroin, methamphetamine and marijuana from Mexico. The DTO began trafficking large loads of heroin, methamphetamine and marijuana into the United States in addition to cocaine. During the course of the investigation, some of these loads of narcotics were seized in Mexico, other foreign countries, and in the United States.

     In sum, the Government anticipates calling numerous foreign witnesses to testify at trial about acts and seizures that occurred outside of the United States. The Government will also need to submit documentation provided by these witnesses for certified translations from Spanish to English. The coordination of their testimony will be substantial. The process alone of arranging for travel, passports and visas for these foreign witnesses could take, and typically does take, several months.

     Accordingly, because of the complex nature of this long-term complex international conspiracy involving five other related defendants (some of who are fugitives and one is pending extradition), the Government respectfully submits that the ends of justice would be served by

granting a continuance of the trial date, and that the "ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). See also Lopesierra-Gutierrez, 708 F.3d at 203-05; Rice, 746 F.3d at 1078-79 (concluding that an "ends of justice" continuance for additional trial preparation was supported by a complex case given "the large number of defendants, the many hours of wiretaps to be transcribed and translated, and the absence of certain defendants still awaiting extradition"). As such, due to the complexity of the charged conspiracy, the voluminous foreign evidence, and the number of foreign witnesses the Government intends to call at trial, this case squarely fits within a finding of a complex case. See 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii).

      Finally, the time until the related defendant is brought to the United States and joined for trial should be excluded under the Speedy Trial Act. The Act states that "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" shall be excluded in computing the time within which the trial must commence. 18 U.S.C. § 3161(h)(6). That provision has been interpreted by the Supreme Court to mean "all defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant." Henderson v. United States, 476 U.S. 321, 323 n. 2 (1986); see also United States v. Calle, 120 F.3d 43, 46 (5th Cir. 1997), cert. denied, 523 U.S. 1012 (1998) ("in a multi-defendant prosecution . . . the Speedy Trial clock begins to run when the last co-defendant makes his initial appearance in court"); United States v. Dota, 33 F.3d 1179, 1183 (9th Cir. 1994), cert. denied, 514 U.S. 1052 (1995) (noting that the "established rule" is "that the speedy trial clock begins to tick on the date the last codefendant appears"); United States v. Davenport, 935 F.2d 1223, 1229-1230 (11th Cir. 1991) (noting that

"the government correctly contends . . . that the speedy trial clock did not begin to run until August 31, 1998, because all of appellant's codefendants had not been apprehended").

In Parga-Rivas, the Court noted that the absence of co-defendants qualifies for an exclusion of speedy trial time, because "the desirability of trying the co-defendants together – with its concomitant savings of trial preparation time, witness time, foreign travel, court time, and jurors' time – made it quite reasonable to await the arrivals of the remaining two defendants [who were pending extradition]." Parga-Rivas, 689 F. Supp. 2d at 28, (citations omitted).

Accordingly, the Government respectfully requests that the Court toll the running of the Speedy Trial Act until such time as the related defendant is brought to the United States and joined for trial, pursuant to 18 U.S.C. § 3161(h)(6).

## IV.  Conclusion

WHEREFORE, for the foregoing reasons, the United States respectfully requests that this Court grant the instant motion and make a finding designating this case as a complex case pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii), and exclude such period of delay.

Respectfully submitted this 28th day of November, 2014.

          ARTHUR WYATT, Chief
          Narcotic and Dangerous Drug Section

By:    /s/ Andrea Goldbarg
       Andrea Goldbarg
       Assistant Deputy Chief
       Narcotic and Dangerous Drug Section
       U.S. Department of Justice
       145 N Street NE
       Second Floor, East Wing
       Washington, DC 20530
       Office: (202) 616-2200
       Fax: (202) 514-6112
       Andrea.Goldbarg@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the defendant, this 28th day of November 2014.

Respectfully submitted,

ARTHUR WYATT, Chief
Narcotic and Dangerous Drug Section

By:   /s/ Andrea Goldbarg
Andrea Goldbarg
Assistant Deputy Chief
Narcotic and Dangerous Drug Section
U.S. Department of Justice
145 N Street NE
Second Floor, East Wing
Washington, DC 20530
Office: (202) 616-2200
Fax: (202) 514-6112
Andrea.Goldbarg@usdoj.gov