**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. 12-cr-184 (RJL)** |
| **ALFREDO BELTRAN LEYVA,** | |
| **Defendant.** | |

**GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE CERTAIN**
**CROSS-EXAMINATION OR ARGUMENT BY DEFENSE COUNSEL**

The United States of America, by and through counsel, respectfully requests this Court issue five pre-trial orders related to the above-captioned trial to limit the scope of cross-examination or argument by Defense counsel into specific areas that are improper, irrelevant, prejudicial, or implicate safety and security concerns. Further, the Government respectfully requests this Court issue two additional pre-trial orders limiting Defense counsel's use of Jencks Act material at trial.

First, the Government seeks to limit cross-examination of Government witnesses regarding ongoing and unrelated investigations as being irrelevant and potentially damaging to the integrity of an ongoing investigation. Second, the Government seeks to limit cross-examination of background and identifying information of Government witnesses that would jeopardize the safety of the Government witnesses or their families. Third, the Government seeks to preclude cross-examination or argument that seeks to gain sympathy for the Defendant as being improper. Fourth, the Government seeks to preclude cross-examination of cooperating witnesses regarding

1

uncharged crimes.  Fifth, the Government seeks to preclude defense counsel from eliciting false exculpatory statements made by the Defendant.

Further, the Government seeks to limit any Jencks Act inquiries to outside the presence of the jury so as to avoid unfair prejudice to the Government.  Lastly, the Government seeks to preclude Defense counsel from attempting to impeach Government witnesses through the use of law enforcement reports as these are not prior statements of the Government witnesses.

In support of these requests, the United States directs the Court to the following points and authorities.

## I.    The Scope of Cross-Examination of the Government's Witnesses and Argument by Defense Counsel Should Be Limited

### A.    Ongoing and Unrelated Investigations

The charges in the indictment stem from a long-term investigation conducted by the Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), and Homeland Security Investigations ("HSI") that revealed a large-scale drug trafficking organization ("DTO"), known as the Beltran Leyva DTO, based in Sinaloa, Mexico.  The Government anticipates calling several law enforcement witnesses at trial who will testify as to seizures related to this DTO, and cooperating witnesses who will testify as to ongoing investigation in which they are also providing assistance.  The Government seeks to limit the scope of cross-examination or argument related to unrelated and ongoing investigations in which these witnesses are involved.

Trial courts have broad discretion to limit and control cross-examination. Harbor Ins. Co. v. Schnabel Found. Co., 946 F.2d 930, 935 (D.C. Cir. 1991), cert. denied, 504 U.S. 931 (1992); United States v. Derr, 990 F.2d 1330, 1334 (D.C. Cir. 1993); Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).  See also, e.g., Herring v. New York, 422 U.S. 853, 862 (1975) ("The presiding

judge must be and is given great latitude in . . . ensur[ing] that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial . . . he must have broad discretion.

Indeed, it is well-settled that the scope and extent of cross-examination is within the sound discretion of the trial court, see Howard v. United States, 389 F.2d 287, 292 (D.C. Cir. 1967); see also United States v. Miller, 738 F.3d 361 (D.C. Cir. 2013) (finding that although the Confrontation Clause guarantees an opportunity for effective cross-examination, trial judges retain wide latitude to impose reasonable limits on such cross-examination), and that the court may properly bar cross-examination which only is marginally relevant to the issues before the court, see United States v. Lin, 101 F.3d 760 (D.C. Cir. 1996) (holding that the Confrontation Clause does not bar a judge from imposing reasonable limits on defense counsel's inquiries, as district courts enjoy wide discretion to control cross-examination); see also United States v. Hemphill, 514 F.3d 1350 (D.C. Cir. 2008) (stating that the Court may prevent questioning that does not meet basic requirement of relevancy, as well as other factors affecting admissibility, without violating Confrontation Clause.)

"Confrontation Clause violations are found primarily where defendants have been given no realistic opportunity to ferret out a potential source of bias." Derr 990 F.2d at 1334. See also United States v. Hayes, 369 F.3d 564, 566 (D.C. Cir. 2004) ("[t]he Confrontation Clause is violated only when the court bars a legitimate line of inquiry that 'might' have given the jury a 'significantly different impression of [the witness's] credibility.'")(citing Van Arsdall, 475 U.S. at 680). Notably, the "Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985).

Because the right to cross-examine is not boundless, the Court may impose reasonable

limits so as to prevent "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Derr, 990 F.2d at 1334; see also Michigan v. Lucas, 500 U.S. 145, 149 (1991). "So long as a reasonably complete picture of the witness' veracity, bias, and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries. Indeed, the judge has a responsibility to do so." United States v. Boylan, 898 F.2d 230, 254 (1st Cir. 1990).

For an inquiry into a witness's specific acts to be admissible, the inquiry must be probative as to the witness's character for truthfulness or untruthfulness. United States v. Tarantino, 846 F.2d 1384, 1406 (D.C. Cir. 1988); Whitmore, 359 F.3d at 618; United States v. Hoover-Hankerson, 511 F.3d 164, 170 (D.C. Cir. 2007). Federal Rule of Evidence ("Rule") 608(b) provides in pertinent part:

> Specific Instances of Conduct. Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b). Fundamental to Rule 608 is the protection of witnesses and judicial administration. Questioning the witness on past conduct creates, for example, the danger of confusing the issues and prolonging the trial.

Allowing the Defendant to cross-examine witnesses on such collateral lines of inquiry will do nothing more than confuse the issues, lead the jury astray, and, in this instance, endanger the safety of the witnesses. If the Court nevertheless allows an inquiry of specific instances of conduct, the Government notes the collateral impeachment doctrine precludes the Defense from putting on other witnesses (or using other extrinsic evidence) to counter testimony. In Whitmore, for

4

example, the Court stated that a "'cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness's denials' and that "'[t]he purpose of this rule is to prohibit things from getting too far afield-to prevent the proverbial trial within a trial." 359 F.3d at 618-19 (quoting United States v. Bynum, 3 F.3d 769, 772 (4th Cir. 1993)). Therefore, Rule 608(b) clearly provides that extrinsic evidence of a witness's past misconduct, other than a prior conviction, is not admissible for the purpose of attacking the witness's credibility. See United States v. Morrison, 98 F.3d 619, 628 (D.C. Cir. 1996), cert. denied, 520 U.S. 1131 (1997).

In support of this motion to limit the scope of cross-examination of the Government's witnesses to preclude any inquiry into their participation in ongoing, unrelated investigations the Government offers that it intends to call witnesses who are currently engaged in unrelated and ongoing law enforcement operations and investigations that are wholly unrelated to the Defendant or the charged conspiracy.  As stated in Whitmore, a district court enjoys considerable discretion "to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of Government witnesses." 359 F.3d at 616.

In the instant case, many of the witnesses the Government intends to call in its case-in-chief are engaged in sensitive, law enforcement investigations similar to the investigation which led to the arrest and indictment of the Defendant.  The Government proffers that evidence elicited on cross-examination of the details of these investigations - investigations unrelated to the Defendant or the instant case - would jeopardize the integrity of these endeavors and potentially endanger the safety of the officers and witnesses, while providing little information of probative or substantive value to the Defense in the instant matters.

For the foregoing reasons, and in accordance with the governing practice in this jurisdiction, the Government respectfully moves to have the Court limit the scope of cross-examination of the Government's witnesses to preclude any inquiry into their participation in ongoing, unrelated investigations that may be jeopardize the investigation itself as well as the safety of the participants in the investigation.

B.    <u>Background and Identifying Information</u>

The Government next seeks to limit the cross-examination of Government witnesses to preclude questioning into information identifying their current residence, careers, or those of their family members, when the cross-examination strategy behind the questioning will serve no purpose other than to impair the search for the truth, such as "harassment, prejudice, confusion of the issues, <u>the witness' safety</u>, or interrogation that is repetitive or only marginally relevant." <u>Van Arsdall</u>, 475 U.S. at 679 (emphasis added).

The Supreme Court clarified that "what counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." <u>Old Chief v. United States</u>, 519 U.S. 172, 184 (1997).  In <u>United States v. Wilson</u>, for example, the Court held that in the context of an ongoing investigation, "[e]ven assuming information about the subject matter of the investigation was probative of bias, the district court would properly have excluded cross-examination pursuant to Rule 403 because 'its probative value [is] substantially outweighed by the danger of unfair prejudice.'"  605 F.3d 985, 1006 (D.C. Cir. 2010) (quoting Fed. R. Evid. 403).  See also <u>United States v. Fuentez</u>, 231 F.3d 700, 705 (10th Cir. 2000) ("[W]e cannot say that the trial court abused its discretion when it limited the scope of inquiry as to that topic. As the Notes relate, the 'substantial' possibilities of abuse in this area, require safeguards including disallowing the use of instances that are remote in time,

requiring the instances to be probative of truthfulness, and subject to the overriding protections of rule 403.") (citing Fed. R. Evid. 608(b)).

The Government respectfully submits that the scope of cross-examination extending to the previously-referenced information would elicit information that could be utilized to further locate witnesses and their family members' residences, places of work, etc., be restricted to preclude such inquiry because such information is neither relevant to the instant prosecution nor probative of the witnesses' basis of knowledge or truthfulness.   As indicated in the previous argument, the Government proffers that some of these witnesses are currently engaged in ongoing investigations, many of which involve the investigation of fugitives and targets that are unaware of the investigative efforts of United States and foreign law enforcement entities.   Some additional witnesses have family members that reside in foreign countries.   Cross-examination on these matters - particularly matters that have little, if anything to do with the Defendant, his defense, or the charged conspiracies - would be of scant probative value. However, the unnecessary disclosure of this biographical-type information that could be utilized to determine the locations of these witnesses or their family members could be exploited by individuals and subjects of investigation to take retributive or preemptive action against these witnesses or their families based upon their testimonies.   As further detailed in the Government's Motion to Admit Other Crimes Evidence, the Government intends to introduce evidence at trial as to the Defendant and his DTO's use of bribery and public corruption to achieve their drug trafficking objectives, as well as violence in the form of kidnappings, torture and murder to silence or eliminate individuals who prevent them from achieving those objectives.   Therefore, the Government has significant concerns as to the ability for retribution against witnesses' families.

The background of witnesses, such as identifying information as to their current addresses,

places of employment, location of family members, is wholly irrelevant. They do not make a material fact in this case more or less probable; nor do they relate to bias.  See United States v. Abel, 469 U.S. 45 (1984).  Therefore, since cross-examining the Government witnesses on these matters do get past the preliminary evidentiary gatekeeper of relevancy, they should be precluded.

Even assuming that such personal information was relevant, then defense should nevertheless be precluded from cross-examining on these matters because the probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay, and wasting of time. Fed. R. Evid. 403.  Any information relating to the Government's witnesses, and certainly their family members, whether here in the United States or in foreign countries, is of minimal probative value at best.  Further, divulging this information could jeopardize the safety and security of the Government witnesses and their families.

For the foregoing reasons, in accordance with the governing practice in this jurisdiction, the Government respectfully moves to limit the scope of cross-examination to preclude any inquiry into current biographical information, the disclosure of which might endanger the security of these witnesses or their family members.

C.    Invoking Sympathy for the Defendant

 The Government next seeks to limit the scope of cross-examination and argument by Defense counsel that is directed at attempting to invoke sympathy for the Defendant. Specifically, the Defense should not be permitted to draw attention to the effect of the Defendant's incarcerations (whether domestic or foreign), trial, or potential convictions and punishment on the Defendant's family members, including the families' need for financial or emotional support.  This kind of information is irrelevant and amounts to nothing more than an appeal to the sympathy of the jury.  See, e.g., United States v. Ramirez, 482 F.2d 807, 816 (2d

Cir. 1973); United States v. D'Arco, No. 90-Cr-1043, 1991 WL 264504, at *4 (N.D. Ill. Oct. 18 1991) (holding that "no testimony or argument will be allowed regarding the impact of the trial or possible conviction upon a family member"); United States v. Shields, No. 90-Cr-1044, 1991 WL 236492, at *4 (N.D. Ill. Aug. 13, 1991) (granting motion in limine precluding "any testimony regarding the possible impact which a conviction might have upon any family member"). Personal or familial consequences of incarceration, trial, conviction or punishment should play no part in the jury's deliberations on whether a defendant is guilty of the crimes charged. Moreover, defense evidence, questions, comments, and arguments on such could invite jury nullification.

It is improper for a defendant to suggest in any way that the jury should acquit even if it finds that the Government has met its burden of proof. See, e.g., United States v. Edwards, 101 F.3d 17, 19-20 (2d Cir. 1996) (holding good motives do not nullify a defendant's violation of the law and a jury should not be encouraged to consider such arguments); United States v. Perez, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict . . . is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification . . . is not a right, either of the jury or of the defendant."); Scarpa v. Dubois, 38 F.3d 1, 11 (1st Cir. 1994) ("Defense counsel may not press arguments for jury nullification in criminal cases."); United States v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognized that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath.").

The D.C. Circuit also adheres to the almost universal rule disapproving arguments that

ask the jury to decide a criminal case on extraneous matters, that is, to engage in jury nullification.  Indeed, this Circuit has consistently refused to admit evidence that is relevant <u>only</u> to the extent that it would support a jury nullification argument or verdict.  <u>United States v. (Myrtle) Washington</u>, 705 F.2d 489, 494 (D.C. Cir. 1983) (holding defendant had no right to an instruction informing the jury of its power to engage in nullification if it found her conduct not culpable or morally blameworthy under prevailing community standards); <u>United States v. Gorham</u>, 523 F.2d 1088, 1098 (D.C. Cir. 1975) ("Of course a jury can render a verdict at odds with the evidence and the law in a given case, but it undermines the very basis of our legal system when it does so."); <u>United States v. Dougherty</u>, 473 F.2d 1113, 1133 (D.C. Cir. 1972) ("This so-called right of jury nullification is put forward in the name of liberty and democracy, but its explicit avowal risks the ultimate logic of anarchy.").

Accordingly, the Government requests a pre-trial ruling precluding counsel for the Defendant from attempting to confuse the jury with appeals based on emotion, sympathy or other similar consideration as a result of the impact of the Defendant's incarceration, trial, conviction or punishment on the Defendant's families.  <u>See</u>, <u>e.g.</u>, <u>United States v. Young</u>, 470 U.S. 1, 7-10 (1985) (holding that court has duty to prevent counsel from making improper arguments to the jury, including those that are designed to divert the jury from its duty to decide the case on the facts and the law); <u>see also</u> <u>United States v. Muse</u>, 83 F.3d 672, 677 (4th Cir. 1996) (explaining that trial court should prevent defense counsel from presenting nullification arguments to the jury); <u>United States v. Sepulveda</u>, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[N]either the court nor counsel should encourage jurors to exercise [nullification] power.  A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification.")

(citations omitted); <u>United States v. Sloan</u>, 704 F. Supp. 880, 884 (N.D. Ind. 1989) (granting Government's motion <u>in</u> <u>limine</u> to preclude jury nullification arguments).

Additionally, while Defense counsel has not suggested that such a defense will be advanced at trial, in an abundance of caution, the Government also moves to preclude any argument or evidence regarding the legalization of marijuana in any state.  Any such defense or examination of witnesses based on such a defense would be improper, as it bears no relation to the guilt or innocence of the Defendant and would seek only to encourage the jury to nullify.[1]

For the foregoing reasons, the Government respectfully moves to limit the scope of cross-examination or argument at trial to preclude any attempts to garner sympathy for the Defendant.

### D.    Cross-Examination of Cooperating Witnesses' Unrelated Conduct

As part of the Government's discovery obligations, the Government intends to provide defense counsel with information related to unrelated conduct of some of the Government's witnesses.  The Government believes that some unrelated conduct is probative in this trial – such as murders cooperating witnesses may have committed or ordered.  However, the Government moves pursuant to Federal Rules of Evidence 608, 609 and 403 to preclude cross-examination and inquiry concerning the Government's cooperating witnesses' unrelated conduct such as an assault on a spouse that did not result in a conviction as not being probative of truthfulness.[2]  Rule 608(b) of the Federal Rules of Evidence, entitled "specific instances of conduct," provides in relevant part:

---

[1]      The Government also intends to seek a jury instruction regarding the fact that importing marijuana into the United States remains a federal crime despite legalization in some states.

[2]      The Government seeks leave from the Court to supplement additional unrelated conduct by the Government's cooperating witnesses that the Government may learn of while preparing for trial in this case.

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . .

By its plain language, Rule 608 permits cross-examination concerning specific instances of conduct, if at all, only to the extent that the conduct in question is probative of truthfulness or untruthfulness.  See Whitmore, 359 F.3d at 616-23.

Prior misconduct that has been found to be probative of truthfulness or untruthfulness includes fraud, bribery, embezzlement, cheating, swindling, endorsement or negotiation of a bad check or unauthorized use of a credit card.  Judge Weinstein has emphasized that Rule 608(b) was intended to be "restrictive," and was amended to ensure that trial courts limit cross-examination to specific modes of conduct which are generally agreed to indicate a lack of truthfulness. See 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 608.22(2)(c)(i) (2d ed. 1997).

Rule 402 of the Federal Rules of Evidence provides, in relevant part, that "irrelevant is not admissible." Rule 401 defines evidence as "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

As previously discussed, a trial court's decision to restrict cross-examination will not be reversed absent an abuse of discretion.  See Derr, 990 F.2d at 1334 ("Confrontation Clause violations are found primarily where defendants have been given no realistic opportunity to ferret out a potential source of bias . . . [c]onversely, courts usually deny such claims so long as defense

counsel is able to elicit enough information to allow discriminating appraisal of witness's motives and bias") (emphasis added) (internal citations omitted); see also United States v. Graham, 83 F.3d 1466, 1474 (D.C. Cir. 1996) ("Confrontation Clause violations are found primarily where defendants have been given no realistic opportunity to allow discriminating appraisal of witness's motives and bias); United States v. Hayes, 369 F.3d 564, 566 ("Confrontation Clause ensures effective cross-examination, but does not deprive trial court of all authority to restrict defense attorney's questioning of government witnesses . . . [the] Clause is violated only when court bars legitimate line of inquiry that might have given jury significantly different impression of witness's credibility") (internal citation omitted); United States v. Celis, 608 F.3d 818, 838 (D.C. Cir. 2010) (defendant's Confrontation Clause rights were not violated, in prosecution for, inter alia, conspiring to import cocaine, by limitations placed on counsel's questions with regard to a discrepancy between witness's written statement and his testimony as to how long he had been with a Colombian terrorist group; counsel was able to effectively point out the discrepancy.)

As a preliminary matter, a cooperating witnesses' assault on his/his spouse never resulted in a conviction of any kind. Thus, there is no basis for allowing evidence of the acts pursuant to Federal Rule of Evidence 609.  Moreover, Federal Rule of Evidence 608(b) provides that "specific instances of conduct of a witness" may be inquired into on cross-examination only if probative of truthfulness or untruthfulness." The acts described above lack any probative value concerning the cooperating witness' character for truthfulness or untruthfulness. See Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967) ("Convictions which rest on dishonest conduct relate to credibility of witness while those of violent or assaultive crimes generally do not.")  Thus, defense counsel should be precluded from cross-examining the Government's cooperating witnesses concerning spousal assault or similar conduct.

Moreover, given the nature of the crimes to which the witnesses have pleaded guilty, namely: narcotics trafficking offenses, defense counsel will have ample other evidence upon which to cross-examine the witnesses, without unfairly prejudicing the jury over instances that did not result in a conviction.  Thus, Defense counsel should be precluded from cross-examining the witnesses regarding these uncharged crimes.

E.    False Exculpatory Statements

The Government is in the process of producing recorded jail calls to Defense counsel in which the Defendant denies any involvement with the drug trafficking activities for which he has been charged.  Additionally, the Government has already disclosed to the Defense that as the Defendant was being transported from Mexico to the District of Colombia, the Defendant made spontaneous statements to the agents proclaiming his innocence. The Government moves to preclude the Defendant from cross-examining the Government's witnesses about the Defendant's false exculpatory statements.

Generally, hearsay statements are not admissible as evidence at trial. See Federal Rule of Evidence 802.  Although an exception exists whereby the Government can present witnesses to testify as to the Defendant's prior inculpatory admissions, there is no exception allowing the Defendant to introduce his prior false exculpatory statements.  Indeed, Federal Rule of Evidence 801(d)(2) does not apply to the Defendant. See United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir. 1996) (noting that during direct examination, the Government could have introduced inculpatory statements made by the defendant but also recognizing that the Federal Rules of Evidence do not "provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party"); see also Fed. R. Evid. 801, 803, and 804.  Thus, it is impermissible for the Defense to attempt to elicit the Defendant's prior denials

through cross-examination.   As such, the Court should preclude the defendant from cross-examining Government witnesses about his prior false exculpatory statements.

**II.      Defense Counsel's Use of Jencks Act Material Should be Limited**

       **A.**      Any Jencks Act Inquiries Should Be Made Outside the Presence of the Jury

The Jencks Act requires the Government to disclose to the Defense any "statements" made by a witness which pertain to the same subject matter as the witness' testimony.   See 18 U.S.C. § 3500.   A "statement" includes: (1) a written statement made by the witness or adopted by him; (2) a "substantially verbatim" contemporaneous recording of an oral statement made by the witness; and (3) grand jury testimony.   18 U.S.C. § 3500(e).   The provisions of the Jencks Act have been codified in Federal Rule of Criminal Procedure 26.2 and 18 U.S.C. § 3500.

By its express terms, neither the Jencks Act, nor the mirroring federal criminal rule, sets forth the procedures for ensuring that all appropriate Jencks Act material has been disclosed. In this jurisdiction, the Circuit Court has determined that the defense request for Jencks Act material and any questioning about the subject should be done outside the presence of the jury. Johnson v. United States, 347 F.2d 803, 806 (D.C. Cir. 1965). The Johnson court held that "in order to avoid the undue prejudice which may arise from the jury's knowledge that Jencks Act statements were available to the accused, motions for their production should be made outside the hearing of the jury." Id. Subsequent decisions following Johnson have noted that the reason for holding the inquiry outside the presence of the jury is to protect the defendant by precluding the jury "from drawing an inference that the prior statements received are consistent with the witnesses' [trial] testimony." Gregory v. United States, 369 F.2d 185, 190 (D.C. Cir. 1966) ("Our purpose in Johnson in requiring that opportunity be provided to defense counsel to request and receive Jencks Act statements outside the presence of the jury is to preclude the jury from drawing an inference

that the statement or statements received are consistent with the witness' testimony unless defense counsel uses the statements to cross-examine him."). <u>Accord</u> <u>United States v. Pickett</u>, 746 F.2d 1129, 1135 (6th Cir. 1984) ("[T]he jury may infer that if the Jencks Act statements are not used in cross-examination that the witness' present testimony is consistent with the statement."); <u>United States v. Frazier</u>, 479 F.2d 983 (2d Cir. 1973); <u>United States v. Nielsen</u>, 392 F.2d 849, 854 (7th Cir. 1968) ("Generally, we believe that the request, tendering, receipt, and inspection of Jencks Act statements should take place outside the presence of the jury, if counsel so requests.").

Moreover, there is also a risk of unfair prejudice to the Government if Jencks Act inquiries by defense counsel are made before the jury.  For example, defense counsel frequently asks numerous questions to Government witnesses about whether they made prior statements to Government agents and whether notes were taken and then demands their production.  By doing this, the Defense may imply to the jury - whether intentionally or otherwise - that the Government is wrongfully withholding material or the witness is being less than candid.  <u>See</u> <u>United States v. Curry</u>, 512 F.2d 1299, 1303 (4th Cir. 1975) (explaining that the trial court read the Jencks Act to the jury so they could "understand the dispute between counsel and to preclude any inference by the jurors that evidence was being withheld from them").  The purpose of the Jencks Act was not to permit cross-examination about the existence of notes; it was intended to facilitate impeachment by cross-examination with prior inconsistent statements contained in any such notes.

Finally, conducting a Jencks Act inquiry in front of the jury can be laborious and time consuming. That is particularly likely in this case where most of the witnesses are foreign nationals and have no prior experience with the United States' judicial system.  There is no reason to subject the jurors to an endless repetition of questions with each witness concerning notes-taking

procedures. The process would not only be excruciatingly boring, but would serve only to confuse the members of the jury. <u>See</u> Fed. R. Evid. 403.

The Government to continues to make every effort to ensure that all material covered by the Jencks Act is provided to defense counsel in advance of trial and the witnesses' testimony. Moreover, the Government is not asking to circumscribe the defense efforts to examine the witnesses as to the existence of other Jencks Act material; rather, in accordance with this Circuit Court's unequivocal holding in <u>Johnson</u>, the Government only requests that all Jencks Act inquiries made by defense counsel be conducted outside the presence of the jury.

For the foregoing reasons, and in accordance with the governing practice in this jurisdiction, the Government respectfully requests that all Jencks Act inquiries made by defense counsel be conducted outside the presence of the jury.

B.      <u>Law Enforcement Reports Are Not Jencks Act Material for Government Witnesses</u>

The Government's second Jencks Act motion relates to the Defense's use of Jencks Act material during cross-examination.  Should the Government call one or more law enforcement agents who conducted interviews with witnesses that were memorialized in investigative reports, these reports (and any available notes) would be among the Jencks  Act  materials disclosed for any testifying agent to the extent the statements in the reports or notes relate to the subject of his or her testimony.  <u>See</u> 18 U.S.C. § 3500.  However, investigative reports and notes are not statements of the interviewed individual under the Jencks Act.  The reports are summaries of interviews and therefore the reports are statements of the agent governed by the Jencks Act.  <u>See</u> <u>United States v. Donato</u>, 99 F.3d 426, 433 (D.C. Cir. 1996).   The Supreme Court has held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements to

impeachment, "only those statements which could properly be called the witness' own words should be made available to the defense." Palermo v. United States, 360 U.S. 343, 352 (1959). Thus, an agent's "summaries of an oral statement [made by the interviewee] which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." Id. at 352-53. Consistent with Palermo then, investigative reports are not discoverable under the Jencks Act as statements of the interviewed witness within the meaning of the statute, unless the witness reviewed and adopted the investigative reports – which was not the practice in this case. Thus, the investigative reports to be disclosed for any testifying agent are not statements of the interviewed witness under subsection (e)(1) of the Jencks Act. Moreover, because the investigative reports are written after interviews are completed and reflect the thought processes and interpretations of the agent, they do not constitute a contemporaneous and substantially verbatim recital of the witness' statement under subsection (e)(2) of the Act.

Other circuit courts have also routinely held that witness interview summaries prepared by agents generally are not discoverable under the Jencks Act. See, e.g., United States v. Price, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" the FBI reports, "these documents are not discoverable under . . . the Jencks Act"); United States v. Jordan, 316 F.3d 1215, 1252 (11th Cir. 2003) (holding that FBI reports "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); United States v. Roseboro, 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous."); United States v. Farley, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was

adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302"); United States v. Williams, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); United States v. Morris, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary."); United States v. Foley, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals . . . and recorded contemporaneously…"); United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent . . . the agents' selection of certain information . . . the district court properly characterized the summaries as non-Jencks Act material."); United States v. Merida, 765 F.2d 1205, 1214-16 (5th Cir. 1985) (Jencks Act did not require Government to release to defense copies of DEA-6s which were short, concise, summaries of witness' versions of facts as recounted to agents, and in which summarization and not verbatim recital was manifest).

Given the well-established law supporting that investigative reports summarizing witness interviews are not the Jencks Act material of the interviewed witness, the Defense should be limited to using the investigative reports or an agent's notes of an interview with a witness consistent with the law and rules of evidence. In particular, the Defense must be precluded from introducing the contents of the investigative reports or notes to impeach witnesses (other than the agent who prepared the report) on the basis of inconsistent statements because the investigative reports or notes are not the statements of the interviewed witnesses themselves. Moreover, the Defense must be precluded from publishing the contents of the investigative report to the jury, or otherwise suggesting to the jury that the investigative report is a statement

of the witness who did not write them or adopt them.  To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's holding in <u>Palermo</u> that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations."  <u>Palermo</u>, 360 U.S. at 350.

The Defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an investigative report or agents' notes.  However, if the Defense is not satisfied with the witness' answer, the Defense may not publish or introduce the contents of the investigative report or notes as a prior inconsistent statement.   <u>See</u> <u>United States v. Brika</u>, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [in which the interviewing agent summarizes the contents of the interview, like an FBI 302] have been deemed inadmissible for impeaching witnesses on cross-examination."); <u>United States v. Leonardi</u>, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); <u>United States v. Hill</u>, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the 302 statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it").  Moreover, the Defense may not use the investigative report or notes in a way that suggests to the jury that the investigative report or notes are a statement of the witness. <u>See</u> <u>United States v. Marks</u>, 816 F.2d 1207, 1211 (7th Cir. 1987) (holding that where defense counsel read from FBI investigative reports during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, judge was entitled to require that witness be shown FBI investigative reports and given opportunity to adopt or reject it as a statement, although such practice was no longer required by federal rules of evidence).  Thus, the Government seeks a pre-

trial ruling precluding the Defense from introducing the contents of investigative reports or agents' notes to impeach witnesses (other than the agent who prepared the report) on the basis of inconsistent statements, publishing the contents of the investigative reports or notes to the jury, or suggesting to the jury in any way that the investigative reports or notes are a statement of the interviewed witness.

## III.    Conclusion

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motion in limine and issue five pre-trial orders related to the trial in the above-captioned case.

Respectfully Submitted,

ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

By:    ____/s/_____
Amanda N. Liskamm
Andrea Goldbarg
Adrian Rosales
Trial Attorneys
Narcotic and Dangerous Drug Section
145 N Street, NE, East Wing, Second Floor
Washington, D.C. 20530
Tel: 202-616-1576
Amanda.Liskamm@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the Defendant, this 19th day of June 2015.

_/s/_

Amanda N. Liskamm
Andrea Goldbarg
Adrian Rosales
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division
Department of Justice