UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** : | |
| : | |
| *v.* : | |
| : | Criminal No. 12-0184(RJL) |
| **ALFREDO BELTRÁN LEYVA,** : | |
| : | |
| *Defendant.* : | |

### DEFENDANT'S FOURTH MOTION TO COMPEL DISCLOSURE OF *BRADY* AND OTHER EVIDENCE

**DEFENDANT** Alfredo Beltrán Leyva ("Beltrán Leyva"), by and through undersigned counsel, respectfully submits this Motion to Compel Disclosure of *Brady* Evidence. In support of this Motion, Mr. Beltrán Leyva states as follows:

### BACKGROUND

On August 24, 2012, the government filed an "bare bones" indictment charging Mr. Beltrán Leyva with one count of Conspiracy to Distribute 5 or more Kilograms of Cocaine, Fifty Grams or More of Methamphetamine, One Kilogram or More of Heroin and One Thousand Kilograms or More of Marihuana for Importation into the United States Knowing and Intending that said substances Would be Imported Into the United States, in violation of 21 U.S.C. §§ 959, 960 and 963, and also includes a forfeiture allegation. The indictment charges a conspiracy "from in or about 2000, and continuing thereafter, up to including" the filing date of the indictment. The indictment further alleges that Mr. Beltrán Leyva conspired with "others known and unknown," in the countries of "Mexico, the United States, and elsewhere" to commit the charged offense. Beyond that boilerplate language, the indictment did not specify any particular activity by Mr. Beltrán Leyva that may be considered part of the conspiracy nor identified any

other individuals who may be coconspirators.

In its Motion *in Limine* to Introduce Other Crimes at trial (Doc. No. 67), the government states

> Additionally, the Government anticipates testimony from a cooperating witness at trial regarding the murder of a co-conspirator, Julio Beltran, who worked directly with the Defendant to traffic cocaine. The Defendant and Julio Beltran were partners in loads of cocaine that were being received in Mexico from Colombia. Part of one of these loads of cocaine was lost, and Julio Beltran reported that only a small portion of this load of cocaine had been saved. It was later learned that Julio Beltran had saved a larger portion of the load and hidden it from the other investors. *The Defendant's brother, Arturo, ordered the Defendant to have Julio Beltran killed, and the Defendant's sicarios carried out the order and killed Julio Beltran*.

Doc. No. 67 at 6-7 (emphasis added). Thus, the government alleges that Mr. Beltrán Leyva carried out the murder at the request of his brother.

Separately, the government filed an indictment against Arturo and Hector Beltrán Leyva (Mr. Beltrán Leyva's older brothers), Joaquin "El Chapo" Guzman Loera, Ismael "El Mayo" Zambada Garcia, Jesus "Rey" Zambada and Ignacio "Nacho" Coronel in the Eastern District of New York (*United States v. Arturo Beltran Leyva, et al.*, 09-CR-00466 (SLT). The original indictment was filed on July 10, 2009, and charged those defendants with participating in a continuing criminal enterprise and multiple counts of trafficking related offenses. On September 25, 2014, the government superseded the indictment and dropped Arturo Beltrán Leyva and Ignacio Coronel (deceased); Hector Beltrán Leyva (detained in Mexico) and Jesus "Rey" Zambada, who is cooperating with the government and is expected to testify at trial. The remaining defendants, Guzman and Ismael Zambada are charged with narcotics and other offenses. Relevant to this Motion, the superseding indictment alleges that Guzman and Ismael Zambada and others "did intentionally kill and cause the intentional killing of Julio Beltran."

Exh. 1 at 22-23.   Trial attorney Andrea Goldbarg is counsel of record in both cases.

Here, the government is seeking to present evidence that Mr. Beltrán and his brother Arturo were responsible for the murder, yet in another case has alleged that Guzman and Ismael Zambada are responsible. Mr. Beltrán Leyva respectfully requests that the Court direct the government to produce any and all such evidence pursuant to *Brady v. Maryland* that relates to Guzman and Ismael Zambada's culpability for the offense.

## ARGUMENT

The ultimate aim of our criminal justice system is not only to secure convictions, but also to ensure that the rights of the accused are protected.  See *Harvey v. Horan*, 285 F.3d 298 (4th Cir. 2002) (Luttig, J., *concurring); Brady v. Maryland*, 373 U.S. 83, 87 (1963).  So fundamental is that two-fold aim that our forefathers drafted substantive and procedural due process requirements into the language of the Fifth and Fourteenth Amendments to the Constitution, thereby mandating that prosecutions "comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Fundamental fairness" is not merely an academic ideal, but is, in fact, "essential to the very concept of justice.'" *United States v.Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941).

Although ours is an adversarial system, the government's "chief business" in a criminal prosecution "is not to achieve victory, but to establish justice." See *Brady*, 373 U.S. at n.2 (quoting, remarks of Solicitor General Sobeloff). While "there was a time when concealment and gamesmanship were accepted as part and parcel of the adversarial process of the criminal justice system" under common law, courts have "decidedly rejected this system long ago."

*Harvey, supra* at 317-318. In fact, the Supreme Court has long held that the government's "overriding interest" in a prosecution is that "justice be done," and, with that basic tenet in mind, the Court has recognized that a prosecutor serves the law above all else. *See United States v. Agurs*, 427 U.S. 97, 110-11 (1976) (internal citations omitted).

Obviously, the government has an obligation to prosecute its cases zealously, however its "primary obligation is to try each case fairly and with due regard for the accused's rights." *United States v. Carter*, 566 F.2d 1265, 1271 (5th Cir. 1978); *cert. denied*, 436 U.S. 956. When the government's conduct violates notions of fundamental fairness and is "shocking to the universal sense of justice," substantive due process is denied. *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246 (1960).

The Supreme Court has "long interpreted this standard of fairness to require that defendants be afforded a meaningful opportunity to present a complete defense." *Trombetta* at 485. "To safeguard that right….what might loosely be called the area of constitutionally guaranteed access to evidence" was developed. *Id.* (quoting *Valenzuela-Bernal, supra* at 867); *See also, Harvey, supra*; *United States v. Moussaoui*, 382 F.3d 453, 474 (4th Cir. 2004). "Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused," thereby "ensuring the integrity of our criminal justice system." *Trombetta,* supra.

Procedural due process demands that prosecutors produce to a criminal defendant all *potentially* exculpatory evidence, even in the absence of a specific request, in order to ensure that the defendant receives a fair trial. *See Harvey, supra (citing Albright v. Oliver*, 510 U.S. 266, 273 & n.6 (1994)) (Emphasis added.); *Augers, supra* at 112. When a prosecutor fails to provide favorable evidence that is "material to guilt or punishment, irrespective of good faith or bad faith," it is commonly called a "*Brady* violation." *Brady,* 373 U.S. at 87; *Moore v. Illinois*,

408 U.S. 786, 794-95 (1972). Evidence is considered "favorable" if it would exculpate the defendant or could be used to impeach a government witness. *United States v. Ellis*, 121 F.3d 908, 914 (4th Cir. 1997); *United States v. Bagley*, 473 U.S. 667, 682 (1985). A defendant's constitutional right to due process is not violated where the favorable and material evidence is disclosed in time for its effective use at trial. *United States v.* Andrews, 532 F.3d 900, 907-908 (D.C. Cir. 2008); *United States v. Smith Grading and Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985) (citing *United States v. Higgs*, 713 F.2d 39 (3rd Cir. 1983). In addition to its constitutionally mandated *Brady* obligations, the prosecution has additional obligations to ensure that a defendant is afforded due process. In fact, as a result of egregious *Brady* violations in recent prosecutions, the Justice Department has recently reminded its prosecutors about their obligation to disclose exculpatory evidence. *See Memorandum for Department Prosecutors*, dated January 4, 2010 (at http://www.justice.gov/dag/discovery-guidance.html).

In this case, the government has charged Mr. Beltrán Leyva with Conspiracy to Distribute 5 Kilograms or More of Cocaine, Fifty Grams or More of Methamphetamine, One Kilogram or More of Heroin and One Thousand Kilograms or More of Marijuana for Importation into the United States. Mr. Beltrán Leyva believes that the government is in possession of possibility exculpatory information that it is withholding in violation of *Brady*. For example, although it has not charged Mr. Beltrán Leyva with Julio Beltran's murder, the government does seek to introduce at trial that *the "Defendant's brother, Arturo, ordered the Defendant to have Julio Beltran killed, and the Defendant's sicarios carried out the order and killed Julio Beltran*." Doc. No. 67 at 6-7 (emphasis added). However, the government in another case alleges that Chapo Guzman and Mayo Zambada had Julio Beltran killed. In order to make that allegation against Guzman and Zambada, the government is believed to be in

possession of evidence, most likely from cooperators, that links Guzman and Zambada to Julio Beltran's murder and that does not implicate Mr. Beltrán Leyva. Whether or not the government alleges in the EDNY case that Guzman, Zambada and "others" are responsible is irrelevant. What is relevant is if the government possesses evidence that someone other than Mr. Beltrán Leyva is responsible for the murder. Mr. Beltrán Leyva respectfully requests that the Court direct the government to produce immediately any and all such evidence that relates to Guzman and Ismael Zambada's culpability for the offense. Under *Brady*, any evidence in the government's possession that is helpful, impeaching or exculpatory must be disclosed to the defense prior to trial.

      **WHEREFORE**, for the foregoing reasons and any other that may become apparent to the Court, Mr. Beltran Leyva respectfully requests that this Motion be **GRANTED**.

Dated: Washington, DC
       September 11, 2015           Respectfully submitted,

                                  **BALAREZO LAW**

                                  /s/
               By:   _____
                     A. Eduardo Balarezo
                     D.C. Bar # 462659
                     400 Fifth Street, NW
                     Suite 300
                     Washington, DC  20001
                     Tel: (202) 639-0999
                     Fax: (202) 639-0899
                     E-mail: aeb@balarezolaw.com

                     *Counsel for Defendant Alfredo Beltrán Leyva*

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that on this 11th day of September 2015, I caused a true and correct copy of the foregoing Defendant's Motion to Compel Disclosure of *Brady* and Other Evidence to be delivered via Electronic Case Filing to the parties in this case.

              /s/
              _____
              A. Eduardo Balarezo