IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )    CR No. 12-184
                                   )
                                   )    Washington, D.C.
          vs.                      )    May 4, 2015
                                   )    11:50 a.m.
ALFREDO BELTRAN LEYVA,             )
                                   )
          Defendant.               )
_____  )


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:        AMANDA LIKSAMM
                           ANDREA GOLDBARG
                           ADRIAN ROSALES
                           Assistant United States Attorney
                           555 4th Street, N.W.
                           Washington, D.C. 20036
                           (202) 252-7785
                           andrea.goldbarg@usdoj.gov


For the Defendant:         A. EDUARDO E. BALAREZO
                           Balarezo Law
                           400 5th Street N.W.
                           Suite 300
                           Washington, D.C. 20001
                           (202) 639-0999
                           info@balarezolaw.com

APPEARANCES CONTINUED:

Interpreter:                    Teresa Salazar

Court Reporter:                 William P. Zaremba, RMR, CRR
                                Official Court Reporter
                                U.S. Courthouse
                                333 Constitution Avenue, NW
                                Room 6511
                                Washington, D.C. 20001
                                (202) 354-3249

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1          P R O C E E D I N G S

2          DEPUTY CLERK:  Your Honor, we have Criminal Action

3  12-184, United States of America versus Beltran Leyva.

4          Counsel, please approach the lectern and identify

5  yourselves for the record.

6          MS. GOLDBARG:  Good morning, Your Honor.

7  Andrea Goldbarg, Amanda Liskamm, and Adrian Rosales on

8  behalf of the government.

9          THE COURT:  Welcome.

10          MR. BALAREZO:  Good afternoon Your Honor.

11  Eduardo Balarezo for Mr. Beltran Leyva.

12          THE COURT:  Welcome.

13          MR. BALAREZO:  Thank you.

14          THE COURT:  All right.  How do things stand for

15  the government?

16          MS. GOLDBARG:  Thank you, Your Honor.

17          Since our last status conference, the government

18  and counsel for the defendant have been involved in

19  negotiations and discussions in terms of seeing if there is

20  a method in which we can resolve this case absent the need

21  for trial.  I think there are certain portions of this

22  discussion that in talking to defense counsel earlier this

23  morning he would like to have under seal, because we believe

24  that there --

25          THE COURT:  I don't understand that.

1          MS. GOLDBARG:  So we've been involved in

2    discussions to see if we can resolve this matter absent the

3    need for trial.  There's an event that we believe is

4    important to resolve this, which has not happened yet, and

5    that's why defense counsel filed a motion, with our consent,

6    to adjourn today, because we believe that if we're given a

7    short period of time, we can let the Court know how we've

8    been able to reach an agreement in which we could resolve

9    this absent the need for trial litigation or if we are, in

10   fact, proceeding to trial.

11         We're -- I think that there's been a good-faith

12   basis on both parts to see if there is the possibility for a

13   resolution absent the need for trial.

14         And due to scheduling, we haven't been able to

15   have that discussion before today's date, and it's going to

16   happen this week.

17         And that's why I think that speaking to defense

18   counsel earlier this morning and over the last couple of

19   weeks, we would ask if the Court would indulge us in two

20   weeks to have, explore, for a very short period of time,

21   explore the possibility of resolving this absent the need

22   for trial.

23         If the Court would allow, and I think that with

24   defense counsel's schedule as well, if we could schedule

25   something for the week of May 18th, I think both parties

1   would feel very confident that we could come to the Court

2   and at that point in time state either, yes, Your Honor, we

3   have reached an understanding and will be able to resolve

4   the matter absent a need for trial.

5            If that's the case, I think both parties can

6   envision a small period of time to have those negotiations

7   and to try and iron out some of the logistics of how that

8   would happen.

9            Or we would come back on the 18th, or whatever

10  date is set by the Court, and say that we have tried and --

11  both sides have tried to engage in this good-faith

12  negotiation, but we are not at a point where we agree, and,

13  therefore, we would like to proceed to trial, and then set

14  trial and set all motions --

15            THE COURT:  The trial date is set.

16            MR. BALAREZO:  No.  The trial date is set.

17  I'm sorry.  It's --

18            THE COURT:  The pretrial conference is set.

19  The trial is set.

20            MS. GOLDBARG:  I think the motion schedule is the

21  only thing that would be pending.

22            THE COURT:  The only thing that's pending.

23            MS. GOLDBARG:  So we would ask to come a back on

24  the 18th, prepare, hopefully, with a better idea of what

25  motions we would be filing and defense counsel would be

1  filing, again, if this were not to --

2          THE COURT:  You said something about something be

3  under seal.  I didn't understand what you were talking

4  about.  What would be under seal?

5          MS. GOLDBARG:  I'll allow defense counsel to

6  explain that, Your Honor.

7          MR. BALAREZO:  Your Honor, thank you.

8          We want to inform the Court as to what our process

9  is at this point; and I would request that that be put under

10  seal, that particular discussion, so that that information

11  is not made public.

12          THE COURT:  Why would the Court want to know what

13  the process is?  I mean, that's between you and the

14  government.

15          MR. BALAREZO:  Well, it was because the government

16  wanted to explain why we need the two weeks.  And if the

17  Court wants to know why we need the two weeks, then I would

18  explain.

19          THE COURT:  Have they given you the name of the

20  person that prepared these diaries?

21          MR. BALAREZO:  Who prepared them?  No.

22          THE COURT:  Why haven't you?

23          I told your co-counsel, find out if he's alive or

24  dead.  Find out if he's going to be available to testify.

25  If he's not available to testify, you won't be using the

1    diaries.

2            Do you have his name?

3            MS. GOLDBARG:  Your Honor, we do have the person.

4            THE COURT:  Is he alive?

5            MS. GOLDBARG:  One person is not alive.  The other

6    person is.

7            THE COURT:  So more than one person prepared these

8    diaries?

9            MS. GOLDBARG:  Yes, Your honor.

10           THE COURT:  Did you know that, Mr. Balarezo?

11           MR. BALAREZO:  No, Your Honor.

12           MS. GOLDBARG:  Your Honor.

13           THE COURT:  Hey, the time for playing hide the

14   ball is over.  Today, you will inform him of who the two

15   people are that prepared those diaries.  You will inform him

16   today --

17           MS. GOLDBARG:  Yes, Your Honor.

18           THE COURT:  -- who they are.

19           The time for hiding the ball is over.

20           You said one is dead?

21           MS. GOLDBARG:  Yes, Your Honor.

22           THE COURT:  When did he die?

23           MS. GOLDBARG:  I'm sorry.  One of the things that

24   we had to do, Your Honor, is to speak, again, with the

25   witness.

1          THE COURT:  This is a simple question.

2          MS. GOLDBARG:  It -- well --

3          THE COURT:  When did he die, month and year?

4          MS. GOLDBARG:  I don't -- I'd have to say

5     approximately, because I don't remember offhand, 2007 or

6     2008.

7          THE COURT:  How long have you known he's been

8     dead?  You personally.

9          MS. GOLDBARG:  How long have I known personally?

10          THE COURT:  Yes.  You're an officer of this court.

11          MS. GOLDBARG:  I am an officer of this court.

12          THE COURT:  How long ago did you learn that he is

13     dead?

14          MS. GOLDBARG:  Probably 2008.

15          I didn't become aware that this -- Your Honor, if

16     I could have an opportunity to explain.

17          The person -- the name we have disclosed to

18     defense counsel and the name that we believe that there is

19     sufficient legal basis to have this witness introduce the

20     documents through, we made arrangements to talk to this

21     person, so, again, we could flesh out all of the

22     information.

23          I think that we had tried to describe to the Court

24     that this person who ran an organization that was a source

25     of supply for the cocaine that was going to the defendant,

1   among others, had a means in which he ordered people to

2   create these ledgers.

3         Based on the Court's last questions, we needed to

4   set up a time to speak to this witness and get those -- that

5   information.  Due to this person's location, we had to make

6   special arrangements and were able to get on a phone call

7   with this witness on Friday.

8         So it was on Friday --

9         THE COURT:  Is this the person that you've told

10   Mr. Balarezo the name of?

11         MS. GOLDBARG:  Yes, Your Honor.

12         THE COURT:  The person who directed these be

13   prepared?

14         MS. GOLDBARG:  Yes, Your Honor.

15         THE COURT:  He's known about that name now for at

16   least a month.

17         MS. GOLDBARG:  Yes, Your Honor.

18         THE COURT:  I'm asking you now about the person

19   who actually prepared them who is alive.  Where is he?

20         MS. GOLDBARG:  That person --

21         THE COURT:  Is he in custody?

22         MS. GOLDBARG:  No, that person is not in custody.

23         THE COURT:  So he's at large.

24         Inside the United States or outside?

25         MS. GOLDBARG:  Outside of the United States,

1    Your Honor.

2            THE COURT:  Okay.  So what's the problem?

3            MS. GOLDBARG:  Your Honor, I think the reason that

4    we were asking to adjourn this status conference was -- and

5    I think that we discussed it with Mr. Balarezo and at the

6    time he was in agreement.

7            If we're going to take good-faith efforts to try

8    and resolve this matter absent the need for trial, we were

9    asking for the litigation posture to at least be suspended

10   so we could have those discussions.

11           THE COURT:  What do you mean, "those discussions"?

12   With who --

13           MS. GOLDBARG:  With the --

14           THE COURT:  -- the person who prepared them?

15           MS. GOLDBARG:  No.  With defense counsel,

16   Your Honor.

17           THE COURT:  Have you ever talked to the person who

18   prepared them?

19           MS. GOLDBARG:  No, I have not, Your Honor.

20           THE COURT:  You talked to the person who directed

21   two people to prepare them; is that right?

22           MS. GOLDBARG:  Yes, Your Honor.

23           THE COURT:  But you never spoke to the person who

24   actually prepared them?

25           MS. GOLDBARG:  Well, one of them was deceased

1    before he ever came to the United States.

2              THE COURT:  I understand that.

3              You didn't talk to the one who's alive?

4              MS. GOLDBARG:  No, Your Honor, because that name

5    we did obtain on Friday.

6              And so, again --

7              THE COURT:  You just learned of his name Friday?

8              MS. GOLDBARG:  Yes, Your Honor.

9              THE COURT:  The person who actually prepared these

10   diaries?

11             MS. GOLDBARG:  Yes, Your Honor.

12             THE COURT:  These ledgers.  Excuse me.

13             MS. GOLDBARG:  Yes.

14             And, again, that's why we want -- the government

15   will still proceed -- if we do go to trial, we would still

16   proceed under the theory that the witness, the name who we

17   have disclosed to defense counsel that we believe --

18             THE COURT:  I've made it clear to your co-counsel;

19   maybe you weren't listening.

20             MS. GOLDBARG:  I was, Your Honor.

21             THE COURT:  Those diaries will not be admitted in

22   this trial without the person who prepared them to

23   authenticate them and to testify subject to

24   cross-examination of what he did, how he prepared them,

25   et cetera, et cetera, et cetera.

1      Do you understand that?  Don't give me this theory

2  stuff.

3          MS. GOLDBARG:  It's not --

4          THE COURT:  You already floated the theory stuff

5  out there.  It's been rejected.  You will not be able to use

6  these diaries absent presenting the witness, unless you can

7  demonstrate in a legally sufficient way, his unavailability.

8          MS. GOLDBARG:  Your Honor, we do believe that

9  we would be in that position.

10          And the information and the details that we've

11  learned from the witness that we would put forth, we do

12  believe that there's a sufficient legal basis for that

13  witness to introduce the ledgers that he ordered to be done;

14  that he oversaw personally; that he was standing next to as

15  the information was being inputted in the ledgers that

16  we would seek to introduce.

17          THE COURT:  Well then, at a minimum, you better

18  give Mr. Balarezo the name of the person who prepared them

19  at the direction of the person whose name you've already

20  given him.

21          MS. GOLDBARG:  We can.

22          And, again, Your Honor, this is not an attempt for

23  the government to obfuscate or to hide the ball.  It's that,

24  since we had our last conversation, again, there have been

25  good-faith efforts and conversations between the government

1    and defense counsel to see, are we really proceeding to

2    trial, or is there a possibility that we can resolve this.

3             THE COURT:  I was under the very clear impression

4    you were proceeding to trial.  I have blocked three months

5    of my schedule.  Three months.

6             MS. GOLDBARG:  I understand, Your Honor.

7             THE COURT:  Do you understand the magnitude of

8    that on a federal judge's calendar?

9             MS. GOLDBARG:  Absolutely.  Yes, Your Honor.

10            THE COURT:  So I was under the absolute impression

11   you were going to trial.

12            And, by the way, if you're negotiating a plea,

13   don't come up with some C plea, because the Court doesn't

14   like C pleas.

15            MS. GOLDBARG:  That wasn't our intention,

16   Your Honor.

17            THE COURT:  Good.  Stay away from them.

18            MS. GOLDBARG:  But, again, so there has been

19   somewhat of a change.

20            And I think that, again, there has been good-faith

21   decisions on both sides.  And we felt that in the interest

22   of judicial economy and the interest of all parties, if this

23   is going to happen, we want a resolution to this now, not

24   only for our sakes, as well as the things that the

25   government has to do, but, more importantly, also for the

1  Court's schedule as well, which is why we would ask for this

2  small indulgence to allow us to see if we can get there.

3          THE COURT:  The only change that was perceived by

4  the Court was in Mr. Balarezo's side of the courtroom, not

5  yours.  It was Balarezo who had been clamoring to have a

6  trial immediately; that all of a sudden changed direction

7  and said, well, we want to discuss a possible plea.

8          So the Court perceived a clear change in direction

9  from the defense, not from the government.  The government

10  would clearly love to have a guaranteed victory.  And that's

11  the way it always works with the government.  And that's why

12  they get 98 percent pleas.  And they accept them, 98 percent

13  pleas, I might add.  So I understand that.

14          It was Mr. Balarezo at the last hearing who said

15  he wanted time to see if he could work out a resolution.

16  Prior to that, he had been clamoring to have a trial ASAP,

17  because of his client's being in custody.  Obviously,

18  there's been a change in heart over on that side of the

19  courtroom.

20          But it's time now to fish or cut bait.

21          MS. GOLDBARG:  Which we agree with, which is why

22  we're trying to do everything we can to try to get this

23  resolved.  We just couldn't get it done before today's

24  conference, which is why we asked defense counsel to inform

25  the Court as to where we were going.

1              THE COURT:  Give him the name today of the

2    person -- who, at the direction of the one who actually

3    prepared it.  He can't buy a pig in a poke.  He's got to

4    know what the status of his situation is.

5              MS. GOLDBARG:  Yes, Your Honor.

6              THE COURT:  He's had the name of the guy who

7    supposedly directed these diaries be prepared -- these

8    ledgers be prepared for over a month.

9              MS. GOLDBARG:  Right.

10             THE COURT:  He's had time to do whatever checking

11   he wants to about that.  But he has not had the name, the

12   person who supposedly -- all these ledgers, as I understand

13   it, were entered on a computer; is that right?

14             MS. GOLDBARG:  They were, Your Honor.  And the --

15             THE COURT:  So there's no --

16             MS. GOLDBARG:  I'm sorry.

17             THE COURT:  Let me finish.

18             So there's no way through, for example,

19   handwriting identification, to link those ledgers to the

20   person who actually prepared them?

21             MS. GOLDBARG:  No, Your Honor.

22             THE COURT:  There's no way at all to link them?

23             MS. GOLDBARG:  No, Your Honor.

24             THE COURT:  And you don't have the computer that

25   was used to actually enter them, do you?

1          MS. GOLDBARG:  No, Your Honor.

2          THE COURT:  So Mr. Balarezo, of course, has got to

3    do his own evaluation of whether or not those kind of

4    weaknesses in the government's case are such that it would

5    change the dynamic in terms of any plea negotiations.

6    That's his job to assess that.

7          MS. GOLDBARG:  Correct, Your Honor.

8          THE COURT:  May 18th, two weeks.

9          MS. GOLDBARG:  Thank you, Your Honor.  What time?

10         THE COURT:  3:00.

11         Mr. Balarezo, do you have anything you want to

12   add, subtract or clarify?

13         MR. BALAREZO:  No, Your Honor.

14         The only thing I will add, just based on the

15   Court's last comment, I did approach the government, because

16   I think it's my ethical duty and obligation to explore all

17   options for my client.

18         THE COURT:  Okay.

19         MR. BALAREZO:  And it's -- as of today, I will

20   say, it has not changed, our position, with respect to

21   September.  If it does, the Court obviously will know in two

22   weeks.  That's it.

23         THE COURT:  Oh, that's fine.

24         I mean, I was just giving you my perception,

25   Mr. Balarezo, nothing more, nothing less, especially in

1  light of the fact that you had, understandably, on a number

2  of occasions, said, we want a trial date right away.

3  And perfectly -- absolutely your right to do so.  And I

4  understand it.  And the Speedy Trial Act is theoretically

5  consistent with your desires, too, I might add, too.

6          MR. BALAREZO:  Correct.

7          THE COURT:  Yes.  So we're doing our best to

8  accommodate your desire to get that trial ASAP.

9          And the government represented to this Court on

10  the record it needed 90 days to 120 days to ensure the

11  safety of the cooperators' families in Mexico.

12          They've made that representation.  And based on

13  that representation, the Court held off setting this trial

14  until the fall to give them the 90 to 120 days they needed

15  to put in place -- the security that they needed to put in

16  place for the families in Mexico of the cooperators in this

17  case.  Okay.  So the Court did that; otherwise, the trial

18  would have been sooner, it would have been sooner.

19          But I gave the government that extra time.  Not to

20  prepare its trial, to secure the families of those

21  cooperators.  Not to help them prepare themselves.  Now, of

22  course, you will have the benefit of it, too, in the sense

23  that you can better prepare for that, for the trial, too.

24          But the Court's bent over backwards to get you a

25  trial as fast as possible with a three-month block of time.

1    You've got it:  September, October and November.  You've got

2    it.

3            MR. BALAREZO:  Thank you.

4            THE COURT:  It's on my calendar.  It's blocked.

5            MR. BALAREZO:  Your Honor, just one final thing,

6    if I may.  And this is not -- this is something that I had

7    raised previously.

8            And I am not asking the Court to rule today in any

9    manner, but to consider for the next time that we appear.

10   In the event that we come back on the 18th --

11           THE COURT:  By the way, does your client waive

12   Speedy Trial Act between now and the 18th?

13           MR. BALAREZO:  He will waive the speedy trial

14   between now and the 18th, yes.

15           THE COURT:  The Court will find in the interest of

16   justice, the Speedy Trial Act will be waived between now and

17   the 18th so that the parties can continue their discussions

18   about possible resolution in the case.

19           MR. BALAREZO:  And the thing is, I have raised

20   this before; and if we can come back on the 18th and say

21   that we have not been able to reach a resolution and we are

22   going to go to trial --

23           THE COURT:  We will set a briefing schedule.

24           MR. BALAREZO:  Right.

25           But I'm still asking that, with respect to the

1    ledgers, that the Court order the government to turn up with

2    the digital file as I had requested previously.  And also to

3    identify in those documents which ones are particular to my

4    client, because, again, there's 1,700 printed pages.  I did

5    what the Court requested of us to go through and --

6            THE COURT:  Well, I'll do you one better than

7    that.  They are going to have to identify which portions of

8    the ledger the person alive did --

9            MR. BALAREZO:  Okay.

10           THE COURT:  -- and which portions of the ledger

11   the person who's dead did.

12           And to the extent that they can't do that, then

13   those pages will not be usable.

14           MR. BALAREZO:  Okay.

15           THE COURT:  So you are not going to have to shoot

16   in the blind here.

17           MR. BALAREZO:  Okay.

18           THE COURT:  And if the person who directed these

19   to be done doesn't know the answer to that question, then

20   that, too, will raise a serious question as to whether the

21   ledgers are usable at all.

22           MR. BALAREZO:  Fair enough.

23           THE COURT:  Because you can't just be put -- we

24   don't have the computer they were made on, we don't know who

25   made them.  You don't know exactly who made which pages of

```
 1    it under what circumstances.

 2            Obviously, there's no Jencks material, that I'm

 3    aware of -- excuse me, Brady material, that I'm aware of,

 4    with regard to this particular witness who directed these to

 5    be made.  You haven't seen any Jencks material regarding

 6    that witness, obviously.  So, you know.

 7            And this is supposedly a centerpiece to the

 8    government's case, right?  Supposedly.  I mean, that's what

 9    they say.  That and the cooperator's testimony.

10            I mean, the government might as well start

11    preparing that right now, talking to their witnesses to

12    who -- which pages were done by the guy who's alive, and

13    which ones were done by the guy who's dead, because you're

14    going to have to make that clear to Mr. Balarezo at some

15    point.

16            MS. GOLDBARG:  Your Honor, if I may respond.

17            Defense counsel did ask us for the information,

18    and we actually do have the information.  And it was on my

19    error, I'm sorry.  We will provide it.  We just got it this

20    morning.  We'll provide it to Mr. Balarezo now.

21    It indicates what Bates stamps numbers of the ledgers that

22    have been prepared specifically deal with this counsel.

23    So we will provide that to him right now.  I believe we'll

24    be discussing those documents probably in more detail.

25    And so we will provide that information to him.
```

1          THE COURT:  I'm not sure I follow what you just

2     said.

3          MS. GOLDBARG:  Defense counsel --

4          THE COURT:  Which Bates stamps number relate to --

5          MS. GOLDBARG:  Mr. Balarezo, we had produced these

6     ledgers as part of the protective discovery.

7          THE COURT:  Right.

8          MS. GOLDBARG:  And they were all Bates stamped

9     numbered.  So Mr. Balarezo has hard copies of all the

10    ledgers.

11         THE COURT:  Right.

12         MS. GOLDBARG:  Mr. Balarezo had asked, since

13    there's about 1,700 pages, if the government could point him

14    to more specific pages that deal specifically with his

15    client, and we agreed to do that.  And I do have that

16    information.  It will be provided to him.

17         THE COURT:  Oh, okay.  Well, that's good.

18         MS. GOLDBARG:  So we will provide that to him

19    today.

20         THE COURT:  So that's a step in the right

21    direction.  I'm glad to hear that.

22         Hopefully, that'll be helpful.  It should be

23    helpful.

24         MS. GOLDBARG:  So we will provide that to him

25    today.

1            THE COURT:  Very good.  Anything else for the

2    defendant?

3            MR. BALAREZO:  Thank you.  No.

4            THE COURT:  Anything else for the government?

5            MS. GOLDBARG:  No, Your Honor.  Thank you.

6            THE COURT:  See you in two weeks.

7            DEPUTY CLERK:  All rise.

8            This honorable court stands in recess until the

9    return of court.

10                  C E R T I F I C A T E

11            I, William P. Zaremba, RMR, CRR, certify that

12   the foregoing is a correct transcript from the record of

13   proceedings in the above-titled matter.

14

15

16

17   Date: May 4, 2015_____   /S/__William P. Zaremba_____

18                                  William P. Zaremba, RMR, CRR

19

20

21

22

23

24

25