UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CASE NUMBER 1:12-cr-00184 |
| ) | |
| v. ) | AFFIDAVIT IN SUPPORT |
| ) | OF REQUEST FOR EXTRADITION |
| ALFREDO BELTRAN LEYVA, ) | |
| also known as "Mochomo," ) | |
| ) | |
| Defendant. ) | |

I, Andrea Goldbarg, being duly sworn, hereby depose and state:

1. I am a citizen of the United States of America, currently working in the District of Columbia.

2. In May 2001, I received a Juris Doctor degree from Boston University School of Law. I was admitted to the Bar of the State of New York in 2002.

3. From September 2001 through August 2002, and again from December 2003 through August 2005, I was employed as an attorney at a private law firm in New York. From August 2002 to September 2003, I was employed as a law clerk to a United States District Judge for the Southern District of California.

4. From September 2005 until December 2010, I was employed as an Assistant United States Attorney in the United States Attorney's Office for the Eastern District of New York. From December 2010 until the present, I have been employed as the Assistant Deputy Chief of the Narcotic and Dangerous Drug Section, Criminal Division, United States Department of Justice. In both capacities, my duties included the prosecution of persons charged with violations of the criminal laws of the United States. Based on my training and experience, I am an expert in the criminal laws and procedures of the United States. I am therefore particularly knowledgeable in the area of law relating to violations of the federal narcotics statutes, including

1

continuing criminal enterprises, conspiracies to possess with intent to distribute controlled substances, conspiracies to import controlled substances into the United States, international distribution of controlled substances, importation of controlled substances into the United States, money laundering, and use of firearms.

5.  As the Assistant Deputy Chief of the Narcotic and Dangerous Drug Section, I am responsible for the preparation and prosecution of criminal cases. In the course of my duties, I have become familiar with the charges and the evidence in the case against **ALFREDO BELTRAN LEYVA**, alias "Mochomo," entitled United States v. Alfredo Beltran Leyva, Case Number 1:12-cr-00184 (also referenced as Case Number CR-12-184-01), which arose out of an investigation into a conspiracy to import cocaine, methamphetamine, heroin and marijuana into the United States from Mexico.

6.  Under the laws of the United States, a criminal prosecution may be commenced by a grand jury when it votes to return and file an indictment with the Clerk of the United States District Court. A grand jury is composed of not less than sixteen (16) people whom the United States District Court selects at random from the residents of its district. The grand jury is an independent body empanelled by the court. The purpose of the grand jury is to examine the evidence of crimes presented to it by United States law enforcement authorities. After independently reviewing this evidence, each member of the grand jury must determine if there is probable cause to believe that a crime has been committed and that the particular defendant or defendants committed the crime. After at least twelve (12) members of the grand jury affirmatively vote that there is probable cause to believe that the defendant or defendants committed the crime or crimes, the grand jury may return an indictment. An indictment is a document that formally charges the defendant or defendants with a crime or crimes, describes the

ABL-000000001070

specific laws that the defendant is accused of violating, and describes the acts of the defendant that are alleged to be violations of the law. After the grand jury returns the indictment, a warrant for the arrest of the defendant or defendants is issued at the discretion of a United States District or Magistrate Judge.

## THE CHARGES AND PERTINENT UNITED STATES LAW

7.  On August 24, 2012, a federal grand jury sitting in the District of Columbia returned and filed an Indictment against ALFREDO BELTRAN LEYVA, charging him with the following offense: in Count One, with conspiracy to distribute controlled substances, namely, five kilograms or more of cocaine, 50 grams of more of methamphetamine, one kilogram or more of heroin, and 1,000 kilograms or more of marijuana, knowing and intending that these controlled substances would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 963, 959, and 960. Cocaine is a Schedule II controlled substance, and heroin and marijuana are Schedule I controlled substances, respectively, pursuant to Title 21, United States Code, Section 812. Methamphetamine is a Schedule II controlled substance pursuant to Title 21, Code of Federal Regulations, Section 1308.12(d)(2).

8.  Based on the charge in the Indictment, on August 24, 2012, the United States District Court for the District of Columbia issued a warrant for the arrest of ALFREDO BELTRAN LEYVA. This arrest warrant remains valid and executable to apprehend ALFREDO BELTRAN LEYVA for the crime charged in the Indictment.

9.  It is the practice of the United States District Court for the District of Columbia to retain the original indictment and warrant of arrest and to file them with the Clerk of the Court. Therefore, I have obtained certified and true and accurate copies of the Indictment and warrant of

ABL-000000001071

arrest for ALFREDO BELTRAN LEYVA from the Clerk of the Court and have attached them to this affidavit as **Exhibit A** and **Exhibit B**, respectively.

10. The relevant portions of the statues cited above are annexed to this affidavit as **Exhibit C**. These statutes were duly enacted and in force at the time the offenses were committed and at the time the Indictment was returned. They remain in full force and effect. A violation of any of these statutes constitutes a felony under the laws of the United States.

11. ALFREDO BELTRAN LEYVA is charged in the Indictment with conspiracy to distribute controlled substances, specifically, cocaine, methamphetamine, heroin, and marijuana, for importation into the United States. Under United States law, a conspiracy is simply an agreement to violate other criminal statutes, in this instance, the laws prohibiting the manufacture, distribution and importation of cocaine into the United States. In other words, under United States law, the act of combining and agreeing with one or more persons to violate United States law is a crime in and of itself. Such an agreement need not be formal and may be simply a verbal understanding. A conspiracy is deemed to be a partnership for criminal purposes in which each member or participant becomes the agent or partner of every other member. A defendant need not be aware of all of the acts of his co-conspirators in order to be held liable for these acts, provided that he is a knowing member of the conspiracy, and the acts of the co-conspirators were foreseeable and within the scope of the conspiracy. A person may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. Accordingly, if a defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him for conspiracy even if he had not participated before and even if he played only a minor part.

ABL-000000001072

12. Because United States law is founded in large part on the English common law system, the law is set forth not only in codified statutes but also in jurisprudence established by binding judicial decisions. Accordingly, I also have appended as part of **Exhibit C** the relevant portions of the decisions in United States v. Shabani, 513 U.S. 10 (1994) and United States v. Graham, 84 F.3d 1466 (D.C. Cir. 1996), which are binding precedent in this judicial district and describe the elements of the crime of conspiracy under United States law, as explained above.

13. Regarding the felony conspiracy offense charged in Count One of the Indictment, the United States must show that ALFREDO BELTRAN LEYVA came to an agreement with one or more persons to accomplish a common and unlawful plan, namely to distribute cocaine, methamphetamine, heroin and marijuana for importation into the United States and that ALFREDO BELTRAN LEYVA knowingly and willingly became a member of the conspiracy. The maximum penalty for a violation of Title 21, United States Code, Section 963, as charged in Count One of the Indictment, is a term of life imprisonment.

14. The Indictment also contains forfeiture allegations against ALFREDO BELTRAN LEYVA and his co-defendants seeking the forfeiture of property and substitute assets as specified in the Indictment pursuant to Title 21, United States Code, Section 853. Forfeiture is a consequence of a conviction on the charges alleged in the Indictment and is not a charge in itself. The forfeiture allegations are included in the Indictment mainly to give the defendant notice of the forfeiture provision. The relevant portions of the forfeiture statute are included in **Exhibit C**.

15. I have also included, as part of **Exhibit C**, the text of Title 18, United States Code, Section 3282, which is the statute of limitations for prosecuting the crimes charged in the Indictment. The statute of limitations merely requires that a defendant be formally charged within five years of the date that the offense or offenses were committed. Once an indictment

has been filed in a federal district court, as with these charges against ALFREDO BELTRAN LEYVA, the statute of limitations is tolled and no longer runs. This prevents a criminal from escaping justice by simply hiding out and remaining a fugitive for an extended period of time. Moreover, under the laws of the United States, the statute of limitations for a continuing offense, such as conspiracy, begins to run upon the conclusion of the conspiracy, not upon the commencement of the conspiracy.

16. I have thoroughly reviewed the applicable statute of limitations and the prosecution of the charges in this case is not barred by the statute of limitations. Since the applicable statute of limitations is five years, and the Indictment returned and filed on August 24, 2012, charges criminal violations occurring between approximately January 2000 and approximately August 24, 2012, ALFREDO BELTRAN LEYVA was formally charged within the prescribed five-year time period.

17. ALFREDO BELTRAN LEYVA has not been tried or convicted of any offense charged in this Indictment, nor has he been ordered to serve any sentence in connection with this case.

18. The United States will prove its case against ALFREDO BELTRAN LEYVA through witness testimony and physical evidence, including audio recordings of lawfully recorded telephone conversations and photographs of the drugs seized, as described below.

### SUMMARY OF THE FACTS OF THE CASE

19. Investigation by law enforcement authorities revealed that ALFREDO BELTRAN LEYVA has been involved in the distribution and illegal importation of drugs from Colombia for the ultimate distribution in the United States since approximately 2000. ALFREDO BELTRAN

LEYVA is a younger brother of Arturo Beltran Leyva, who until his death in 2009 was one of the most prolific drug traffickers in Mexico.

20. ALFREDO BELTRAN LEYVA started working in the Beltran Leyva drug trafficking organization created by his older brothers, Arturo and Hector. ALFREDO BELTRAN LEYVA initially was assigned to coordinate the offloading of ton-quantity shipments of cocaine from Colombia. ALFREDO BELTRAN LEYVA was later promoted to one of Arturo Beltran Leyva's main assistants, in which role he oversaw the shipment of thousands of kilograms of cocaine into the United States and the subsequent distribution of the cocaine for sale in the United States.

21. The investigation by law enforcement authorities revealed that ALFREDO BELTRAN LEYVA created his own alliances and had his own followers, including Fausto Isidro Meza Flores, alias Chapo Isidro and Agustin Flores Apodaca, alias El Niño, alias El Barbon, alias El Ingeniero, alias Agustin Apodaca Flores. After ALFREDO BELTRAN LEYVA's arrest by Mexican law enforcement authorities in January 2008, he continued to give orders to Fausto Isidro Meza Flores and Agustin Flores Apodaca while he was incarcerated. In addition to carrying out ALFREDO BELTRAN LEYVA's orders during his incarceration, Fausto Isidro Meza Flores and Agustin Flores Apodaca paid ALFREDO BELTRAN LEYVA part of the proceeds from the Beltran Leyva Organization's sales of cocaine, heroin, methamphetamine, and marijuana in the United States.

22. On September 2, 2010, law enforcement authorities seized 33 pounds of methamphetamine and four kilograms of cocaine in the State of Washington. Laboratory analysis has confirmed that the substances seized on September 2, 2010 were methamphetamine and cocaine. Telephone conversations that were lawfully intercepted and recorded under United

ABL-000000001075

States law revealed discussions among members of the Beltran Leyva Organization involving distribution of the Organization's drugs in the United States and the purchase of machineguns and destructive devices to be used in furtherance of the Organization's drug trafficking activities.

23. I have attached to this affidavit, as **Exhibit D**, the original affidavit of Special Agent Britton Boyd of the Federal Bureau of Investigation. In his affidavit, Special Agent Boyd summarizes the investigation of ALFREDO BELTRAN LEYVA's drug trafficking activities and the evidence that resulted in the Indictment in this case. Attached to Special Agent Boyd's affidavit and made part of this extradition request are the laboratory reports describing the chemical analyses on the methamphetamine and cocaine seized on September 2, 2010; transcripts of several lawfully recorded telephone conversations in which ALFREDO BELTRAN LEYVA's employee Agustin Flores Apodaca and his co-conspirators discussed drug trafficking activities and weapons purchases; and a photograph of ALFREDO BELTRAN LEYVA.

24. I have also attached to this affidavit, as **Exhibit E,** the original, sworn affidavit of a Cooperating Witness (Witness One) who engaged in the conspiracies charged in this case with ALFREDO BELTRAN LEYVA. In his/her affidavit, Witness One also identifies photographs of Agustin Flores Apodaca, Salome Flores Apodaca, and Fausto Isidro Meza Flores. In his/her affidavit, Witness One identifies a photograph of ALFREDO BELTRAN LEYVA. He/She also identifies the voice of Agustin Flores Apodaca on certain lawfully recorded telephone conversations, the transcripts of which are attached to Special Agent Boyd's affidavit. Witness One is not identified by name for fear that disclosure of his/her identity will subject him/her and his/her family to threats of bodily harm and death. Witness One has informed law enforcement authorities that he/she is aware of specific instances of violence, including murder, committed by the Beltran Leyva Drug Trafficking Organization against those who have betrayed them.

8

ABL-000000001076

25. I have also attached to this affidavit, as **Exhibit F**, the original, sworn affidavit of another Cooperating Witness (Witness Two), who had direct conversations with Agustin Flores Apodaca and Fausto Isidro Meza Flores in which Agustin Flores Apodaca told Witness Two that he and Fausto Isidro Meza Flores were receiving and carrying out orders directly for ALFREDO BELTRAN LEYVA, and that profits from the sale of drugs by Agustin Flores Apodaca and Fausto Isidro Meza Flores were being shared with ALFREDO BELTRAN LEYVA.

26. The names of Witness One in **Exhibit E** and Witness Two in **Exhibit F** have been redacted, as noted above, due to safety concerns. United States law permits the redaction of a witness's name or the use of a pseudonym for the protection of a witness's safety. The United States Supreme Court decided in McCray v. State of Illinois, 386 U.S. 300 (1967), that, in the early stages of a criminal proceeding such as a preliminary hearing, where the court needs to rule only on probable cause and not on guilt or innocence, law enforcement authorities are not required to disclose the identity of a witness whose information forms the evidentiary basis for a finding of probable cause. Similarly, the Supreme Court in McCray noted in earlier cases that it had "made it clear that federal officers need not disclose an informer's identity in applying for arrest or search warrants" where the legal standard is probable cause.

27. Under United States law, a witness may remain confidential at the early stages of a criminal proceeding without violating a defendant's right to legal process because a defendant will have ample opportunity at trial to confront any witnesses that may be used to prove his guilt or innocence. As the Supreme Court explained in McCray, the government's ability to withhold the identity of an individual who provides law enforcement authorities with information about crimes encourages citizens to communicate their knowledge about the commission of crimes to

law enforcement authorities and that, by preserving their anonymity, citizens are more likely to disclose information to law enforcement authorities. Similar to a preliminary hearing, an extradition hearing, pursuant to Article 3 of the Treaty between the United Mexican States and the United States of America, requires a finding equivalent to probable cause that the defendant committed the crime and does not require the amount of evidence needed to make a finding of guilt or innocence. Under the laws of the United States and in compliance with the rights allowed to a defendant by the Constitution of the United States, an individual who is extradited to stand trial in the United States will have a full opportunity at trial to question witnesses who present evidence that may be used against him.

28. Moreover, it is our understanding that Articles 14 and 35 of the *Ley Federal contra la Delincuencia Organizada* similarly allow for the use of pseudonyms by cooperating witnesses who are providing information to law enforcement authorities to further criminal investigations in order to protect the safety of such cooperating witnesses. It is our understanding that Article 14 of the *Ley Federal contra la Delincuencia Organizada* specifically provides for the protection of the identity of an individual who was a member of an organized criminal group and who is cooperating pursuant to Article 35 of the *Ley Federal contra la Delincuencia Organizada* in order to aid in the law enforcement investigation.

29. Finally, I have attached to this affidavit, as **Exhibit G**, the original declaration of Alejandro Tascon, a Colombian drug trafficker that spent several years working for the Beltran Leyva brothers, including ALFREDO BELTRAN LEYVA. Over the years, Tascon supplied the Beltran Leyva Organization, including ALFREDO BELTRAN LEYVA, with tens of thousands of kilograms of cocaine from Colombia, which were ultimately sent to the United States for distribution and sale. In his declaration, Tascon identifies a photograph of ALFREDO

BELTRAN LEYVA as the individual to whom he supplied large quantities of cocaine for the Beltran Leyva drug trafficking organization.

## IDENTIFICATION

30. **ALFREDO BELTRAN LEYVA** is a Mexican citizen, born on January 12, 1971, in Sinaloa, Mexico. He is described as a Hispanic male, approximately 5 feet 9 inches in height, weighing approximately 190 pounds, with brown hair and brown eyes. A photograph of ALFREDO BELTRAN LEYVA is attached to the affidavit of Special Agent Boyd and made part of this extradition request. Witness One and Alejandro Tascon have identified this photograph as being ALFREDO BELTRAN LEYVA, the man with whom they engaged in drug trafficking activities.

## CONCLUSION

31. This affidavit and the affidavits of Special Agent Boyd, Witness One, and Witness Two each were sworn to before a United States federal judge, who is a person duly empowered to administer an oath for this purpose. The declaration of Alejandro Tascon was executed under penalty of perjury, pursuant to Title 28, United States Code, Section 1746.

ANDREA GOLDBARG
Assistant Deputy Chief
Narcotics and Dangerous Drug Section
Criminal Division
United States Department of Justice

SWORN AND SUBSCRIBED TO BEFORE ME
THIS 30th DAY OF JANUARY 2013

HONORABLE DEBORAH A. ROBINSON
UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ABL-000000001079