**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 12-CR-184 (RJL)** |
| v. | |
| **ALFREDO BELTRAN LEYVA,** | |
| Defendant. | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM**
**IN AID OF SENTENCING**

**I.   Introduction**

The Government respectfully submits this Supplemental Memorandum in Aid of Sentencing in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines Manual, § 6A1.2 (U.S. Sentencing Comm'n 2015). The Government seeks a sentence that is sufficient, but not greater than necessary, to comply with the purposes of Section 3553(a), and for the reasons set forth below believes a Guidelines sentence of life imprisonment is reasonable. Sentencing is scheduled for April 5, 2017 at 2:30 p.m.

**II.   Background**

    A.   Procedural History

On February 23, 2016, the Defendant pleaded guilty to the sole count of the Indictment, conspiracy to import narcotics into the United States, but only as it related to cocaine and methamphetamine. Sentencing was originally scheduled for June 6, 2016. After repeated requests by the Defendant to continue the sentencing hearing for a variety of reasons, on February 9, 2017, the Defendant filed a Motion to Withdraw Guilty Plea claiming his plea was tainted (See Docket

1

Entry No. 227). On February 10, 2017, the Court denied the Defendant's Motion as the Defendant had no viable claim of innocence and his plea was not tainted.

On February 23, 2017 and March 1, 2017, the Court conducted evidentiary hearings as to the applicable sentencing enhancements in this case. On March 8, 2017, the Court determined that the following enhancements applied in this case:

| | | |
|---|---|---|
| Base Offense Level: | 38 | *Over 450 kilograms of cocaine* |
| Organizer/Leader: | +4 | *U.S.S.G. § 3B1.1(a)* |
| Weapons: | +2 | *U.S.S.G. § 2D1.1(b)(1)* |
| Violence: | +2 | *U.S.S.G. § 2D1.1(b)(2)* |
| Bribery: | +2 | *U.S.S.G. § 2D1.1(b)(11)* |
| Importation: | +2 | *U.S.S.G. § 2D1.1(b)(15)(C)* |
| Total Offense Level: | 50[1] | *Life* |

At the March 8, 2017 hearing, the Court also heard argument as to the forfeiture amount of $10,000,000,000 requested by the Government. The Court ordered that the parties' supplemental sentencing memorandums were to be filed by March 24, 2017, and the sentencing hearing is set for April 5, 2017 at 2:30pm.

### III.  **Applicable Sentencing Law**

#### A.  Acceptance of Responsibility

The Defendant is not entitled to a three-point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Indeed, the law is clearly settled in this Circuit that a defendant who pleads guilty, and then moves to withdraw his guilty plea is <u>not</u> entitled to acceptance of

---

[1]  The Court did note that the Government presented evidence at the evidentiary hearings related to the Defendant's use of airplanes and methamphetamine laboratories (U.S.S.G. § 2D1.1(b)(3) and U.S.S.G. § 2D1.1(b)(5)), however, as the Court has already determined an offense level of 50, it was not necessary for the Court to make any further factual findings.

responsibility. In United States v. Berkeley, 567 F.3d 703 (D.C. Cir. 2009), the defendant initially agreed to plead guilty to distribution of cocaine base, but before sentencing moved to withdraw his plea. The Court in Berkeley denied the defendant's motion to withdraw his plea and during sentencing, determined that the defendant was ineligible for a reduction for acceptance of responsibility. 567 F.3d at 711. The Circuit affirmed the District Court's conclusion that the defendant's "motion to withdraw a guilty plea in and of itself is a statement that [the defendant] did not wish to let the guilty plea stand, and therefore, he didn't wish to accept responsibility for this offense." Id.

Likewise here, the defendant plead guilty on February 23, 2016 and almost one year later, on February 10, 2017, the Defendant filed a motion to withdraw his guilty plea. The Defendant's motion to withdraw his guilty plea is likewise in and of itself a statement that the defendant does not wish to let his guilty plea stand. Thus, he is not accepting responsibility for his offense and is not entitled to a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.

Further, the defendant has both falsely denied and frivously contested the relevant conduct in this case (including his leadership role, his use of weapons and violence, the bribes he paid and his importation of drugs into the United States). All of this relevant conduct was proven by a preponderance of evidence at the multiple sentencing evidentiary hearings. Additionally, the Court is aware of other corroborative statements that make the defendant's denials of the relevant conduct patently false. As such, the defendant is not entitled to acceptance of responsibility. See United States v. Saani, 650 F.3d 761, 767-68 (D.C. Cir. 2011) (finding that a district court may consider whether the defendant truthfully admitted or falsely denied or frivolously contested, ay additional relevant conduct for which the defendant is accountable when determining eligibility for a reduction for acceptance of responsibility); see also United States v. Rashad, 396 F.3d 398,

403 (D.C. Cir. 2005) (holding that reduction for acceptance of responsibility is directed at the defendant's affirmative recognition for his own conduct, as determined by the court); see also United States v. Webb, 255 F.3d 890, 902-03 (D.C. Cir. 2001) (finding that defendant not entitled to reduction for acceptance of responsibility where, even after his conviction, defendant failed to either admit his guilt or express remorse).

For these reasons, the Defendant is not entitled to the three-level reduction for acceptance of responsibility.[2]

      B.      18 U.S.C. 3553(a) Factors Warrant a Life Sentence

The United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") still provide strong guidance to the Court in light of United States v. Booker, 543 U.S. 220 (2005). Although Booker held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. Booker, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" - that "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 39 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the applicable Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)).

---

[2] Pursuant to 3E1.1(b), the third point is only applicable "upon motion of the [G]overnment." The Government is not moving for the third point in this case based on the defendant's motion to withdraw his plea.

Gall, 552 U.S. at 50.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within the Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," Rita v. United States, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," Gall, 552 U.S. at 46. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 51.

For the reasons set forth below, a sentence within the applicable Guidelines range of life imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing.

Specifically, these factors are most important: the nature and circumstances of the offense, the need for the sentence to reflect the severity of the offense, the need for adequate deterrence, and the need to protect the public.

### 1. Nature and Circumstances of the Offense, and Need for the Sentence to Reflect the Severity of the Offense

The incredibly serious nature and circumstances of this offense clearly warrant a guideline sentence of life imprisonment. Indeed, the guidelines do not even contemplate the extent of this Defendant's culpability in that the Defendant's offense level does not even fall on the Sentencing Table – a testament to the severity of the offense. Indeed, the Defendant, himself, cites how serious and dangerous his conviction is considered. (See Def. Sent. Memo at 19). It is not an overstatement to highlight that organized international drug trafficking on the scale perpetuated by the Defendant poses a grave and serious threat to the national interest of this nation as well as other countries in the region. The toll that the drug trafficking industry takes on the United States each year is astronomical. Indeed, cocaine and methamphetamine abuse is the fuel for an extraordinary amount of violence in this country, as well as the destruction of families, lives and communities.

Measured against this backdrop, it is clear that the Defendant's illegal activities constitute a most egregious form of criminal conduct. The evidence brought out at the sentencing evidentiary hearings shows that the Defendant's activities of violence, bribery and major narcotics trafficking were at an unprecedented scale for over a decade. This type of serious criminal conduct warrants a guideline sentence in this case. Thus, the serious nature and circumstances of this offense necessitates a sentence of life imprisonment.

### 2. Adequate Deterrence

Given the adverse impact that drug trafficking has on society, it is important that the

Court impose a sentence that deters others from undermining the rule of law.  Further, while this prosecution has incapacitated some of the narcotics trafficking through Mexico, importation of controlled substances from Mexico and the region into the United States still occurs.  The recommended sentence would provide a critical general deterrence to other narcotics trafficking leaders that their participation in narcotics importation into the United States will result in substantial sentences.

### 3. Protect the Public from Further Crimes of the Defendant

Prior to his arrest, the Defendant was a leader of a DTO responsible for trafficking significant quantities of cocaine, methamphetamine and marijuana to the United States.  A life sentence is the only way to protect the public from further crimes committed by the Defendant.  Anything short of a life sentence would lead to the Defendant's deportation back to Mexico, where his criminal activity will only continue.  As previously noted, the Defendant committed his crimes while he resided in Mexico and he continued to orchestrate shipments of drugs into the United States <u>while he was incarcerated</u> in Mexico.  The Defendant's power and influence in Mexico over public officials and his co-conspirators was a result of nearly three decades of drug trafficking.   Despite the Defendant's extradition to the United States, his DTO continues to operate through the DTO's remaining leadership which includes members of the Defendant's family still residing in Mexico.  As a result, any possibility of the Defendant's return to Mexico will result in a return to his criminal activities.

### 4. The Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) articulates "the need to avoid <u>unwarranted</u> sentence disparities among defendants <u>with similar records</u> who have been found guilty of <u>similar conduct</u>." 18 U.S.C. § 3553(a)(6) (emphasis added).  By its terms, the statute requires a specific evaluation of the

compared defendants' records and conduct. When determining whether a sentence creates an unwarranted disparity, the Court should also consider, inter alia, a defendant's acceptance of responsibility, the nature and extent of a defendant's participation in the criminal activity, a defendant's criminal history, and whether and to what extent a defendant cooperated. See, e.g., United States v. Mejia, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" by co-defendant's acceptance of responsibility and thus any disparity resulting from defendant's "harsher" sentence was not unwarranted). A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." United States v. Carrasco-De-Jesus, 589 F.3d 22, 29 (1st Cir. 2009).

    The Defendant argues that he should not receive a life sentence because there are other narcotics traffickers who have gone to trial and received non-life sentences. (See Def. Sent. Memo at 22-23). The Defendant's reliance on these other cases is misplaced for several reasons. First, the Defendant attempts to argue that since these other defendants actually went to trial and the Defendant in this case did not go to trial, he should receive a lesser sentence than the other cited defendants. The Defendant completely ignores that he plead guilty on the eve of trial – forcing the Government to prepare their case for trial in its entirety. Additionally, it was not until after the Government proffered all of the evidence it would present at trial (including naming the coopearing witnesses and what their anticipated testimony will be), that the Defendant decided to plead guilty. Further, the Defendant's argument completely ignores the amount of litigation in this case – primarily by the Defendant. Indeed, the Defendant filed twenty-two (22) motions before trial, and vigorously fought the Government's Motion for a Complex Case Designation and Protective Order. Further, even after his guilty plea, the Defendant filed an additional nine (9) motions, including his motion to withdraw his guilty plea. Thus, the Defendant's comparison to defendants

who went to trial is flawed.

Further, the cases the Defendant cited are not comparable to the Defendant in this case. Indeed, the Defendant cites seven (7) cases in which the defendants went to trial – all of who were Colombians. The Government notes for the Court that these defendants were not eligible for life sentences as a condition of these defendants' extradition from Colombia was that the United States Government promised the Government of Colombia that it would not seek a sentence of life imprisonment in those cases. Therefore, the Defendant's comparison of his case to these other cases is again misplaced, as there was no such agreement with the Government of Mexico in relation to the Defendant's extradition.

Additionally, the cases that the Defendant cites do not involve similarly situated defendants and are factually distinct from the instant case. For example, in United States v. Juan del Cid Morales, 06-cr-248 (JDB) (D.D.C. 2008) the defendant was a former police officer who was charged with trafficking one load of 1,500 kilograms of cocaine. This is clearly distinct from the instant case where the Defendant plead guilty to trafficking tonnage loads to the United States for over a decade. Further, in light of this Court's findings with respect to the applicable sentencing enhancements (such as his leadership within the Beltran Leyva Organization, his use of weapons, violence, and bribery to further his drug trafficking organization), the instant case is factually distinct from del Cid, and the Defendant in this case is deserving of a far more significant sentence.

Likewise, in United States v. Samuel Santander Lopesierra, 02-cr-392 (RJL) (D.D.C. 2007), the defendant was convicted of participating in five loads totaling just over 2,000 kilograms of cocaine. Again, that defendant is factually distinct from the Defendant in this case – one of the leaders of the Beltran Leyva Organization, responsible for trafficking tonnage quantities of cocaine into the United States. Indeed, just the seized loads of cocaine that the Government intended to

introduce at trial in the instant case totaled approximately 50,000 kilograms.  Further, as the Court heard during the sentencing evidentiary hearings, the Defendant was sending caravans of planes loaded full of cocaine to the United States border in order to be trafficked to multiple cities inside the United States.  These caravans were carrying between 2,100 and 7,000 kilograms <u>per week</u>.

The Defendant also cites the cases of <u>United States v. Omar Garcia Varela</u>, 99-cr-804 (S.D. Fl. 2011) and <u>United States v. Erminso Cuevas Cabrera</u>, 04-cr-446 (D.D.C. 2010).  Again, the Defendant fails to see that his case is factually distinct from Garcia Varela and Cuevas Cabrera.  Namely, Garcia Varela was a sicario who worked for the head of a drug trafficking organization.  Therefore Garcia Varela was essentially equivalent to "Wacho" and "Rayito" in our current case – the head sicarios for the Defendant.  Thus, any comparison to Garcia Varela's case is improper.  Likewise, Cuevas Cabrera was in charge of laboratories where he had approximately 80 workers.  Conversely, as the Court heard during the sentencing evidentiary hearings, the Defendant was in charge of multiple methamphetamine laboratories, had hundreds of employees and was responsible for all of the drugs being trafficked from Culiacan, Mexico to the United States for his organization.  Therefore, the Defendant's reliance on these cases is woefully misplaced.

Interestingly, the Defendant ignores cases in this district that exemplify that a defendant of his stature is deserving of a life sentence.  For example, in <u>United States v. Cano Flores</u>, 796 F.3d 83 (D.C. Cir. 2015), a local, border plaza boss working for the Gulf Cartel received a sentence of 35 years.  Indeed, Cano Flores was not the leader of the Gulf Cartel, but rather of a small plaza controlled by the Gulf Cartel, and therefore, someone much lower in terms of culpability than the Defendant.  The Defendant here is incredibly more culpable in that he was a leader of a major drug trafficking organization responsible for moving hundreds of thousands of kilograms of drugs into the United States.  As evidenced during the evidentiary hearings, the Defendant also employed the

use of weapons, violence and bribery in order to accomplish his goals of trafficking this poison onto the streets here in the United States. For that, he is deserving of a life sentence.

## IV.    Conclusion

For the foregoing reasons, the Government respectfully requests that the Court sentence the Defendant to a term of imprisonment within the applicable Sentencing Guideline range of life imprisonment. The Government submits that this sentence is sufficient, but not greater than necessary, to punish the Defendant for his crime, promote respect for the law, deter the Defendant and others from committing similar serious crimes in the future, and protect the public.

Respectfully submitted this 24th day of March, 2017.

>ARTHUR WYATT, Chief
>Narcotic and Dangerous Drug Section
>Criminal Division
>United States Department of Justice

By: /s/
>Amanda N. Liskamm
>Adrian Rosales
>Trial Attorneys
>Andrea Goldbarg
>Marcia M. Henry
>Assistant United States Attorneys
>United States Department of Justice
>Narcotic and Dangerous Drug Section
>145 N Street, Northeast
>East Wing, Second Floor
>Washington, D.C. 20530

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the defendant, this 24th day of March 2017.

        Respectfully submitted,

        ARTHUR WYATT, Chief
        Narcotic and Dangerous Drug Section

By:    /s/_____

        Amanda N. Liskamm
        Adrian Rosales
        Trial Attorneys
        Andrea Goldbarg
        Marcia M. Henry
        Assistant United States Attorneys
        Narcotic and Dangerous Drug Section
        U.S. Department of Justice
        145 N Street NE
        Second Floor, East Wing
        Washington, DC 20530