IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )   CR No. 12-184
                                   )
                                   )   Washington, D.C.
      vs.                          )   July 20, 2016
                                   )   3:17 p.m.
ALFREDO BELTRAN LEYVA,             )
                                   )
          Defendant.               )
_____  )
```

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE RICHARD J. LEON
UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For the Government:      ADRIAN ROSALES
                         AMANDA LISKAMM
                         ANDREA GOLDBARG
                         MARCIA HENRY
                         U.S. DEPARTMENT OF JUSTICE
                         Narcotic and Dangerous Drug
                         Section
                         145 N Street, NE
                         Second Floor, East Wing
                         Washington, D.C. 20530
                         (202) 598-2281

For the Defendant:       A. EDUARDO E. BALAREZO
                         Balarezo Law
                         400 5th Street, NW
                         Suite 300
                         Washington, D.C. 20001
                         (202) 639-0999
                         info@balarezolaw.com

APPEARANCES CONTINUED

```
Interpreters:              Benjamin Engelsberg
                           Maria Krismancich

Court Reporter:            William P. Zaremba
                           Registered Merit Reporter
                           Certified Realtime Reporter
                           Official Court Reporter
                           U.S. Courthouse
                           333 Constitution Avenue, NW
                           Room 6511
                           Washington, D.C. 20001
                           (202) 354-3249
```

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                 P R O C E E D I N G S
 2          DEPUTY CLERK:  All rise.  The United States
 3  District Court for the District of Columbia is now in
 4  session, the Honorable Richard J. Leon presiding.  God save
 5  the United States and this Honorable Court.  Please be
 6  seated and come to order.
 7              (Defendant entered.)
 8          DEPUTY CLERK:  Good afternoon, Your Honor.
 9  Calling Criminal Case No. 12-184, the
10  United States of America v. Alfredo Beltran Leyva.
11          The defendant is present in the courtroom.
12          Will counsel for the parties please approach the
13  lectern and identify yourselves for the record.
14          MS. GOLDBARG:  Good afternoon, Your Honor.
15          For the government, Andrea Goldbarg,
16  Adrian Rosales, Marcia Henry.
17          Also present at counsel table is FBI Special Agent
18  Britton Boyd and Paralegal Specialist Angela
19  Ancalle-Jimenez.  Thank you.
20          THE COURT:  Welcome.
21          MR. BALAREZO:  Good morning, Your Honor.
22  Eduardo Balarezo on behalf of Mr. Beltran Leyva, along with
23  my co-counsel, William Purpura.
24          And I think we're having a little bit of a
25  technical difficulty with the headphones.
```

1          THE COURT: That's not a surprise.

2          DEPUTY CLERK: Your Honor, the Probation Officer

3   present for these proceedings is Renee Moses-Gregory.

4          The interpreters, who have been sworn for the

5   record, are Benjamin Engelsberg and Maria Krismancich.

6          THE COURT: Well, nothing about this case has ever

7   been easy, nothing. So it shouldn't be a surprise to me

8   that this won't be easy.

9          They'll be no sentencing today.

10          The issues that this is -- that these parties have

11   failed to work out and teed up for this Court are of such

12   magnitude that there's no way we can even proceed with a

13   hearing today, because there are fundamental questions that

14   have to get resolved by this Court before we can even

15   proceed to the next phase.

16          I mean, the government's filing motions for

17   preliminary orders of forfeiture for $10 billion. Come on.

18   Come on.

19          And you're fighting over basic issues of

20   enhancement that would seem, at first blush, to be almost

21   inconsistent with the plea.

22          So okay. We'll break it down into its component

23   parts. We'll have more hearings, probably take at least two

24   more hearings to get to a point where we can do a

25   sentencing. Doesn't shock me, because nothing has been easy

 1   about this case from the very beginning.

 2           So let's start with your Preliminary Order of

 3   Forfeiture.  You may have noticed I didn't issue one.

 4           MS. GOLDBARG:  Your Honor, the government was not

 5   anticipating or expecting the Court to do so.

 6           In conversations with defense counsel, we -- the

 7   government understands that there are issues mostly

 8   surrounding the enhancements that are included in the

 9   probation presentence investigation report.

10           While we -- there were discussions to see if there

11   could be an agreement, defense counsel requested a hearing,

12   and the government is prepared to put on witnesses or a

13   witness.

14           The government has produced 3500 material to the

15   defense regarding the issues specifically dealing with the

16   hearing, as well as information regarding the criminal

17   forfeiture that the government is seeking.

18           The idea was to put the witness on today to

19   address those issues, and from that point, the Court can

20   make a decision or determination if the government has met

21   its burden, A, as to all of the requested enhancements that

22   are in the PSR, as well as the criminal forfeiture judgment,

23   whether or not the Court feels that our number is too high

24   or too low.

25           THE COURT:  Where did you come up with the notion

1  that the number would be $10 billion?

2          MS. GOLDBARG:  Your Honor --

3          THE COURT:  Where did that come from?

4          MS. GOLDBARG:  It's actually a process that the

5  agent is willing and prepared to testify about today.

6          THE COURT:  No.  I'm just asking you to describe

7  it in general terms.

8          MS. GOLDBARG:  Yes, sir.

9          THE COURT:  Is it not based on a number larger

10  than the seven loads that were interdicted?

11          MS. GOLDBARG:  Absolutely, Your Honor.

12          THE COURT:  Okay.

13          So what is your legal basis to go beyond the seven

14  loads that were interdicted?

15          MS. GOLDBARG:  Because, Your Honor, the seven

16  loads that the government intended to introduce at trial as

17  acts in furtherance of the conspiracy -- at sentencing, the

18  government is allowed to introduce additional evidence.

19  This is a 12-year conspiracy.  And the evidence that the

20  government intended to introduce was based on the witnesses

21  that would have testified at trial.  Number one, a median

22  price that the cocaine which the defendant was selling was

23  sold for in the area that he controlled, and that would be

24  multiplied by the number of kilos of cocaine that the

25  government anticipates that it could attribute directly to

1    the defendant that the defendant sold in the area that he

2    controlled.

3              THE COURT:  What would be the basis for that

4    witness or those witnesses' recollection of how much cocaine

5    was being processed and illegally distributed in the

6    United States at the direction of this defendant?

7              MS. GOLDBARG:  That's not what the law --

8              THE COURT:  Is this just on memory?

9              MS. GOLDBARG:  First of all, it's not what the

10   defendant distributed on the streets in the United States.

11   It's what the gross profits that the defendant received as

12   part of his role within this conspiracy.

13             And --

14             THE COURT:  That he received personally?

15             Are you saying that the organization received?

16             MS. GOLDBARG:  We believe that this amount of

17   money is what we can prove that the defendant received in

18   gross receipts, not attributing --

19             THE COURT:  That he received personally?

20             MS. GOLDBARG:  Correct.  For the quantity of

21   drugs.

22             We believe that it's a fairly conservative

23   estimate to say that during the time in which the defendant

24   was involved in this conspiracy, he was involved in selling

25   over 600,000 kilograms of cocaine.  600,000 kilograms of

1    cocaine at the price in Culiacán at $16,000 a kilo, takes us

2    well over the $10 billion mark.

3                And so the information that we would -- and that

4    the agent is prepared to testify about is, number one, one

5    of the witnesses that --

6                THE COURT:  Who's this agent?  This is the case

7    agent?

8                MS. GOLDBARG:  The case agent.  Yes, Your Honor.

9                THE COURT:  Yes.  What's his name?

10               MS. GOLDBARG:  Britton Boyd.

11               THE COURT:  Yeah.

12               And what's his testimony based on?

13               MS. GOLDBARG:  His testimony would be based on

14   interviews that were done with the witnesses who were

15   prepared to testify at trial.

16               THE COURT:  How many witnesses?

17               MS. GOLDBARG:  For the criminal forfeiture,

18   it would be compiling the brief testimony of four witnesses.

19               For the enhancements, it was compiling the

20   information of two witnesses.

21               THE COURT:  So those four witnesses are all

22   cooperators?

23               MS. GOLDBARG:  Yes, Your Honor.

24               THE COURT:  All right.

25               So they're currently in jail in the United States?

1          MS. GOLDBARG:  Yes, Your Honor.

2          THE COURT:  All right.

3          And as to those four witnesses that Mr. Boyd is

4    going to be supposedly testifying about based on his hearsay

5    understanding of what they would have testified to if the

6    case had gone to trial --

7          MS. GOLDBARG:  Absolutely, Your Honor.

8          THE COURT:  -- of those four witnesses, what

9    discovery materials have you provided the defense so that

10   they can cross-examine Mr. Boyd?

11         MS. GOLDBARG:  We provided all the 3500 materials

12   with regards to the specific acts that the agent will be

13   testifying to, as well as in preparation for the trial that

14   had been set, the government had already produced the *Giglio*

15   material.

16         So we believe that with the information provided

17   to defense counsel, the government had complied with all of

18   its discovery obligations in order to be prepared for this

19   hearing today.

20         THE COURT:  As to those four witnesses?

21         MS. GOLDBARG:  Correct, Your Honor.

22         THE COURT:  And you would estimate the direct

23   examination to summarize the potential testimony of those

24   four witnesses to be how long in duration?

25         Direct examination.

1          MS. GOLDBARG:  Direct examination, perhaps maybe

2    half an hour, 45 minutes for the criminal forfeiture.

3          THE COURT:  Half an hour?

4          MS. GOLDBARG:  Yes, Your Honor.

5          We've taken the Court's instructions to be very

6    precise and very narrow.

7          Seriously.  And we --

8          THE COURT:  That sounds not even conceivable.

9          I mean, how could you possibly --

10         MR. ROSALES:  For the criminal forfeiture part?

11         THE COURT:  This is four witnesses who would have

12   testified at trial.

13         MR. ROSALES:  Correct.

14         THE COURT:  The direct examination for each of

15   those witnesses alone would have been hours for each.

16         MS. GOLDBARG:  Correct, Your Honor.

17         THE COURT:  Hours.

18         MS. GOLDBARG:  Correct.

19         THE COURT:  So how is Mr. Boyd supposedly going to

20   boil down those four witnesses' testimony to a half hour?

21   That doesn't sound even realistic.

22         MS. GOLDBARG:  Your Honor, the focus of the

23   criminal forfeiture portion of the hearing would be simply

24   to summarize and go into details what those four witnesses

25   would have testified simply as to the quantity of drugs that

1    the defendant was selling that were passing through his area

2    and the prices that were used.  So it's a very narrow --

3              THE COURT:  How about some fundamental questions

4    like, how was it that Witness 1, Witness 2, Witness 3,

5    Witness 4 knew this?  What position was the witness in to be

6    in a position to know these things?  What was the extent of

7    that witness's interaction with the defendant?  What was the

8    extent of his knowledge as to the defendant's knowledge of

9    what was going on?

10             I mean, to go through a series of just basic

11   questions, there's no -- I don't see how that can be done in

12   a half an hour as to those four witnesses.

13             MS. GOLDBARG:  Your Honor, with regard to the

14   first two witnesses, those are the witnesses that would have

15   been the basis for the government's position, a request for

16   the enhancements that are in the PSR.

17             That direct examination with regard to those

18   witnesses and the enhancements, we would estimate would

19   take --

20             THE COURT:  I'm not talking now about

21   enhancements.

22             MS. GOLDBARG:  I understand, Your Honor.

23             THE COURT:  I'm only focusing right now on one

24   thing, forfeiture.

25             MS. GOLDBARG:  Correct.  Yes.

1    However, if the government presented Special Agent

2  Boyd to talk first about the enhancements, which is how we

3  anticipated it would go, the information regarding Witness 1

4  and Witness 2 would already be into evidence, and,

5  therefore, it only needs to focus on Witness 3 and

6  Witness 4, which we believe that we've tried to take a

7  conscious effort to narrow the information to establish how

8  the witness has the information and provide the information,

9  without making this is a very drawn-out process.  So

10  focusing simply on the issue of the criminal forfeiture.

11    THE COURT:  What was it about 3 and 4 that would

12  warrant such a truncated presentation, as compared to 1 and

13  2?

14    MS. GOLDBARG:  Well, with Witnesses 3 and 4, the

15  only issues that were -- that we would be seeking testimony

16  about is what role they had, what interactions they had with

17  the defendant, did they sell cocaine to the defendant, if

18  so -- or provide cocaine to the defendant, if so, how much

19  did they provide, over what period of time, and at what

20  price.

21    So it's not --

22    THE COURT:  And they're doing it all from memory,

23  right?

24    MS. GOLDBARG:  Special Agent Boyd would be doing

25  it from his interviews and from the reports.

1          THE COURT:  That's not my question.

2          Those witnesses whose testimony he would be

3   summarizing are doing it from memory, not -- no records.

4          MS. GOLDBARG:  With regards to Witness 3, that's

5   correct.

6          Witness 4, there are ledgers that had already been

7   produced that the government would have introduced at trial.

8   That would have been used -- the Court mentioned the seven

9   drug loads.  Those are the ledgers that had been the topic

10  of so many status conferences.

11         THE COURT:  Yes, I recall those.

12         So the notion is you would put Agent Boyd on for

13  direct examination of an hour and a half or more on the

14  enhancements --

15         MS. GOLDBARG:  Correct.

16         THE COURT:  -- before he would ever get to any

17  testimony regarding Agent -- Witnesses 1 through 4 on the

18  issue of seizure?

19         MS. GOLDBARG:  Correct, Your Honor.

20         Not seizure, Your Honor.  Criminal forfeiture.

21         THE COURT:  Excuse me.  Forfeiture.  Right.

22         MS. GOLDBARG:  Correct.

23         THE COURT:  So we're talking about a minimum of

24  two hours on direct --

25         MS. GOLDBARG:  Yes, Your Honor.

1           THE COURT:  -- that you anticipate.

2           Now, of course, in the normal course of events, we

3     anticipate, generally, an equal amount of cross for the

4     amount of direct.  So that's four hours.

5           Since this hearing was starting at 3:00, 2:30,

6     there's no way I could be concluded today, not possible.

7     So obviously, we're going to have to find a day where four

8     to six hours of testimony can be carved out.

9           MS. GOLDBARG:  Yes, Your Honor.

10          It is the government's position that the Court

11    does not need the witness for any of this, but we understand

12    that defense counsel did ask to have a hearing on these

13    issues and so, therefore, the government prepared to do so

14    in case the Court wanted us to do so.

15          So if the Court would like to tell us when it

16    would like us to come back, we're happy to do so.

17          THE COURT:  Well, let me first hear from

18    Mr. Balarezo on the issue of the forfeiture.

19          MS. GOLDBARG:  Thank you.

20          MR. BALAREZO:  Yes, Your Honor.

21          THE COURT:  I assume you have thoughts on this

22    subject, Mr. Balarezo.  You have thoughts on virtually every

23    subject.  I would be shocked if you didn't have thoughts on

24    this subject.

25          MR. BALAREZO:  Well, I would tend to agree with

1    the Court, as I often do, with respect to the topics that

2    you have described, specifically the forfeiture and the

3    $10 billion figure.

4            However, I did request a hearing, and I know the

5    government said that it's their position that a hearing is

6    not required and that the Court should simply proceed on

7    the --

8            THE COURT:  You can forget about that discussion.

9    Believe me, there'll be a hearing.

10           MR. BALAREZO:  All right.

11           Our request is that, Your Honor, the way this

12   proceeds, as the Court will remember, is that Mr. Beltran

13   pled guilty in February to the indictment without the

14   benefit of a plea agreement the week before trial.

15           THE COURT:  I don't know why you used that

16   expression you just used.

17           MR. BALAREZO:  "Without a plea agreement"?

18           THE COURT:  No, you didn't say that.  You said

19   "Without the benefit of a plea agreement."

20           Let's have no mistake about this.  Let's not have

21   the record muddied up about this:  It was his choice to

22   plead straight-up.

23           MR. BALAREZO:  Correct.

24           THE COURT:  Pure and simple.

25           He's the one who wanted to plead straight out.

1    That was the situation.  Pure and simple.

2            It's not like he was being deprived some benefit

3    of a plea agreement.  No such a thing would be accurate, nor

4    a fair representation on the record.

5            So he chose to plead straight-up on the eve of

6    trial.

7            MR. BALAREZO:  My client chose to plead to the

8    indictment.

9            And what I meant or I, perhaps, should have

10   clarified when I said "without the benefit of a plea

11   agreement," is that typically, when an agreement is reached

12   with the government, there are certain benefits that are

13   conferred, and, for example, agreements as to the

14   enhancements and various other things that the Court is

15   aware.  That's all I meant.  But it was my client's decision

16   to plead guilty to the indictment.

17           Now, based on what he pled guilty to -- and we

18   will concede that the Base Offense Level is a level 38 based

19   on the quantities that are involved here.  And a Base

20   Offense Level, assuming that that is what he will be

21   sentenced on, it's about -- 235 to 293 months is the

22   Guidelines.

23           Now, the government here is seeking an additional

24   12 points in enhancements, which takes the theoretical

25   Guidelines from what I just said from 20 to 25 years, up to

1    life.

2           I think -- our position is that it's a matter of

3    fundamental fairness and of due process to not only have a

4    hearing, but for the Court to have the witnesses themselves

5    present to testify so that the Court can make a

6    determination as to their reliability.

7           THE COURT:  Now, let's stop you right there.

8    There is no necessity for that under the Rules --

9           MR. BALAREZO:  Agreed.

10          THE COURT:  -- or the precedent in this circuit

11   whatsoever.

12          Indeed, one of the reasons, and one of the

13   benefits, frankly, to having a plea entered in a case is to

14   spare the witnesses, especially those who are incarcerated,

15   especially those whose lives would be at stake, from having

16   to be brought here and have all the attending security

17   issues that would arise in that context from having to take

18   place.  So there's no necessity of that under the law,

19   there's no necessity of it under the precedent in this

20   circuit or any other circuit, to my knowledge.  So that's

21   not happening.  The law specifically provides:  Hearsay is

22   admissible.

23          The case agent who's interviewed, I believe, all

24   of these witnesses firsthand is in a position, or should be,

25   he'll be subject to cross-examine, to know what it is that

1   they would testify to and how it was that they learned what

2   they learned.  And, you know, he'll be in a position to sit

3   in that chair under oath and testify and be cross-examined

4   as to what these witnesses would have said if they had been

5   called at trial.

6           Indeed, we've had proffers, but they were from the

7   government, they were from the lawyers.  And I agree with

8   you that that's not enough.  I don't agree with the

9   government that that's enough.

10          I think for the Court to make the findings it has

11  to make by a preponderance of the evidence, someone is going

12  to sit in that chair and testify, subject to cross-examine.

13  And hearsay is permissible.  So I guess the person they've

14  decided is the person to do it is the case agent, and that's

15  what it will be.

16          MR. BALAREZO:  Your Honor, I understand the case

17  law that hearsay is admissible in this proceeding or in the

18  sentencing proceeding and that it's not required that a

19  witness who was -- firsthand witness testified.

20          What I'm suggesting is that in this case, again,

21  where there's a 12-level enhancement that the government is

22  seeking that basically takes the Guidelines from the

23  20-some-year range to life in prison, that, again, is an

24  issue of due process; that the Court should have witnesses

25  here, because what the agent is going to testify to will be

1    what he heard these individuals say.  And sure, he'll be

2    subject to cross-examine, but our cross-examination

3    obviously is going to be very limited because we're going to

4    be stuck with his answers and/or whatever is in the

5    documents or the notes that were taken, the *Jencks* material.

6            THE COURT:  Well, I was going to say, as to the --

7    we haven't talked yet about this agent's testimony with

8    regard to the enhancements, we have not gotten into that

9    yet.  We're going to get to that in a second.

10           But as it relates to the four witnesses relating

11   to the forfeiture, the prosecutor has represented that she

12   has produced to date all of the discovery material that's

13   apposite as to those four witnesses whose testimony the

14   agent would be summarizing.  Is that consistent with your

15   understanding?

16           MR. BALAREZO:  Your Honor, I received

17   approximately 250 pages yesterday afternoon and about maybe

18   another 100 pages this morning of material that reports to

19   be the *Jencks* material for these witnesses.  It's heavily

20   redacted.  There are portions which address my client

21   specifically and any actions that he took that are redacted

22   within those portions.  So it's difficult to decipher who is

23   saying what about whom.

24           For example, it will say Alfredo sent 5,000 kilos

25   to Culiacán or from Culiacán.  Okay.  That's basically what

1    the *Jencks* is.  There's no information there in the material

2    as to exactly how these witnesses got —— found out that

3    information.  A lot of it is just information being thrown

4    out there.

5              THE COURT:  Well, of course, you can ask the

6    agent.

7              MR. BALAREZO:  Of course.

8              THE COURT:  The agent will —— hopefully, in his

9    testimony on direct, is going to provide some clarity and

10   some basis for his understanding, because, one, of course,

11   expects an agent, when interviewing witnesses of this kind,

12   especially witnesses who are incarcerated, who have a stake

13   in cooperating, that might help them to basically do his or

14   her level best to figure out the accuracy of these

15   statements, indeed, to the extent possible, to corroborate

16   them.

17             So he must have taken steps, one would assume, to

18   satisfy himself, at a minimum, of the accuracy of these

19   representations that this person was going to testify to in

20   this trial.  And you can inquire about what steps he took,

21   if any, to do that.  You'll be able to do that.

22             MR. BALAREZO:  I know that, Your Honor.

23             But I can tell you that the material that was

24   provided yesterday does not contain any of that information;

25   for example, what the agent did to corroborate.  So in a

 1  sense, I'm going to be stuck with his answer.  I have no

 2  other material beyond that, beyond what these witnesses said

 3  about my client.

 4          THE COURT:  Well, hopefully, on direct

 5  examination, he's going to be asked some of these questions.

 6          MR. BALAREZO:  I'm sure he'll be asked on cross.

 7          THE COURT:  You would certainly think so.

 8          And then depending upon what happens on direct,

 9  your cross may or may not go in that direction or need to go

10  in that direction, right?

11          MR. BALAREZO:  Correct.

12          THE COURT:  So assuming a half an hour, which, to

13  me, seems ludicrously small for the forfeiture part, what

14  would you anticipate your cross-examination to take, a half

15  an hour, an hour, two hours?

16          MR. BALAREZO:  Your Honor, I would say at least a

17  few hours on cross-examination.

18          THE COURT:  That sounds like it might be right.

19          All right.  So in my own mind, I, as I think of

20  rescheduling this for a hearing, a full-blown hearing,

21  I'm going to be thinking in terms of two to three hours on

22  the forfeiture issue alone.  Hopefully, I'm wrong.

23          And is there any additional discovery on the

24  forfeiture issue you think you have a right to or need or

25  whatever?

1        MR. BALAREZO:  Your Honor, the ledgers that we

2   have discussed, those have been produced before, I have

3   access to that.

4        THE COURT:  That's good.

5        MR. BALAREZO:  And I don't know what else is in

6   the government's possession, but they felt that the

7   information that was provided yesterday met the requirements

8   of 18 U.S.C. 3500.  I will take them at their word and I

9   will work with that.

10       I don't know of any other material that exists

11  that would allow me to -- that I could review so that I can

12  prepare for the forfeiture aspect of this.

13       THE COURT:  Do you have any additional legal

14  arguments you need to make with regard to the scope of the

15  narcotics trafficking that might be the basis for any

16  calculation of the amount of the forfeiture that the

17  government is seeking?

18       MR. BALAREZO:  If I recall correctly, many of the

19  documents relate -- that were for Witnesses 3 and 4, in

20  particular, I believe, that have to do with the forfeiture,

21  also mentioned individuals that were involved in the

22  so-called Federacion, which would be the greater conspiracy,

23  if you will.

24       And I would say that based on --

25       THE COURT:  You mean the El Chapo operation,

1   Sinaloa?

2          MR. BALAREZO:  El Chapo, Mayo, Sinaloa, and other

3   individuals.

4          I would say, at least based on my understanding of

5   the Court's rulings and directives before, that the amount

6   should only be limited as to the Beltran Leyva Organization,

7   as the government and the Court have defined that,

8   I believe.

9          THE COURT:  No reason why I'm going to rule any

10  differently.

11         So it's going to have to be very clear, at least

12  to me, in any examination of the case agent, that we're

13  talking about quantities of narcotics that were related to

14  the Beltran Leyva Organization, not the Federacion, not the

15  Sinaloa Cartel.

16         And trying to keep straight, in situations where

17  there's a shipment to Culiacán that was being financed

18  jointly by Sinaloa Cartel and Beltran Leyva Cartel, trying

19  to keep straight, well, which portion of that shipment was

20  owned by Sinaloa and which part was owned by Beltran Leyva,

21  that may be very difficult to do, if not impossible to do.

22  I don't know.  We'll see.  Certainly, that would be a topic

23  for both direct and cross-examination, keeping those

24  straight, and not assuming, that any given shipment was

25  owned completely by Beltran Leyva Cartel.

1          So to the extent that that's what the government

2     has in mind, they're going to have to satisfy the Court that

3     they can keep straight the distinction between the two

4     operations as to attributing responsibility to only that

5     portion that is for the Beltran Leyva Cartel.

6          Do you have anything else?

7          MR. BALAREZO:  I don't, Your Honor, not with

8     respect to the forfeiture.

9          THE COURT:  All right.  Well, then let's go to the

10    next topic, which is the enhancements.

11         Ms. Goldbarg.

12         MS. GOLDBARG:  Yes, Your Honor.

13         THE COURT:  So your proposal is that you will have

14    one witness for all, let's see, there's three, four, five

15    different enhancements, right?

16         MS. GOLDBARG:  Correct.

17         There will be one agent testifying, and we will be

18    relying on the testimony of two witnesses for those

19    enhancements.

20         THE COURT:  Which two witnesses?

21         MS. GOLDBARG:  Consistent with the government's

22    request after the last hearing, we did present a list of

23    witnesses, Witnesses 1 through 4, and we would ask that they

24    be called 1 through 4 for purposes of the hearing.

25         We provided a list that we've provided to defense

 1   counsel of who, when we say Witness 1, who we refer to.

 2   I have a copy of this.  If the Court would like to see it,

 3   I'm happy to provide one to the Court.

 4           THE COURT:  Is it your hope and expectation that

 5   this hearing will be a hearing where these people's names

 6   aren't mentioned?

 7           MS. GOLDBARG:  Yes, Your Honor.

 8           THE COURT:  How can that be?  How can that be?

 9           MS. GOLDBARG:  Happy to approach and --

10           THE COURT:  You're welcome to approach, but I'm

11   hard-pressed to understand how you think this can be done in

12   secrecy.

13           MS. GOLDBARG:  May we approach?

14           THE COURT:  This is an open sentencing.

15           MS. GOLDBARG:  Correct, Your Honor.

16           THE COURT:  This is not a closed-door sentencing.

17           MS. GOLDBARG:  We understand that, Your Honor.

18           THE COURT:  And you are laying out the evidence

19   that you're arguing is the basis for a life-prison term.

20           MS. GOLDBARG:  Correct, Your Honor.

21           May we approach, Your Honor?

22           THE COURT:  Sure.

23           (Ex parte, sealed bench conference)

24           THE COURT:  ███████████████████████████████

25   ████████████████████████████████████████████████████



1   ██████████████████████████████████████████

2   █████████████████

3       ████████████████████████████████

4   █████████████████

5       THE COURT:  ███████████████████

6   ██████████████████

7       MS. GOLDBARG:  ████████████████████

8   ████████████████████████████

9       THE COURT:  ████████████████████████

10   █████████████████████████████████████████████

11   ███████████████████

12       MR. ROSALES:  ██████████

13       ████████████████████████████████

14       ██████████████████████████████████████

15   ████████████████████████████████████████████

16   ███████████████████████████████████████

17   ████

18       THE COURT:  ████████████████████████████

19   ████████████████████

20       ██████████████████████████████████████

21   ██████████████████████████████████████

22   ████████████████████████████████████████

23   ███████████████████████

24       MS. GOLDBARG:  ██████████████████

25       ██████████████████████████████████



8      THE COURT:

9      MS. GOLDBARG:

10     THE COURT:

12     MR. ROSALES:

14     THE COURT:

16     MS. GOLDBARG:

17     THE COURT:

18     MS. GOLDBARG:

23     THE COURT:

25     MS. GOLDBARG:

```
1    ████████████████████████████
2         ██████████████████████████████████
3    ██████████████████████████████████████
4    ████████████████████████████████████████
5    ██████████████████████████████████████
6    ██████████████████████████████████████
7         ██████████████████████████████████████
8    ██████████████████████████████████████
9    ████████████████████████████████████████
10   ████████████████████████████████████
11   ██████████████████████████████████████
12   ██████████████████
13         MR. BALAREZO:  ██████████████████
14   ████████████████████████████████████
15   ████████████████████████████████████████
16   ██
17        ██████████████████████████████████████
18   ██████████████████████████████████████
19   ████████████████████████████████████████
20   ████████████████
21         MS. GOLDBARG:  ██████
22         MR. BALAREZO:  ██████████████████
23   ██████████████████████████████
24   ████████████████████████████████
25   ████
```



1        MS. GOLDBARG:

2

3

4

5

6

7

8

9

10

11

12

13

14

15        MR. BALAREZO:

16

17

18

19        THE COURT:

20

21

22        MR. BALAREZO:

23

24

25

1    ████████████████████████████████████

2         THE COURT:  ██████████████████████████████

3         MR. ROSALES:  ████████████████████

4         (Open court)

5         THE COURT:  The Court will take the issue under

6    advisement as to whether or not the witnesses will be able

7    to be shielded by a witness number, notwithstanding the fact

8    that their names have been previously identified in open

9    court in a prior hearing in this case.

10        With regard to the enhancements, the testimony of

11   the agent would be -- as to the five different enhancements,

12   the testimony of the agent would be related to just -- did

13   you say just two of the four witnesses?

14        MS. GOLDBARG:  Yes, Your Honor.

15        THE COURT:  Witness 1 and 2, you said.

16        MS. GOLDBARG:  That's correct, Your Honor.

17        THE COURT:  All right.

18        MS. GOLDBARG:  The government, obviously, could

19   present more testimony.  But we believe that with the

20   evidence that's going to be presented, that's going to be

21   more than sufficient for the government to meet its burden

22   for those enhancements.

23        THE COURT:  All right.  So just Witnesses 1 and 2?

24        MS. GOLDBARG:  Correct, Your Honor.

25        THE COURT:  But all four for the forfeiture?

1            MS. GOLDBARG:  Correct, Your Honor.

2            THE COURT:  All right.

3            And with regard to breaking it down a little

4    further, role in the offense is the first adjustment,

5    specific offense characteristic firearms possessed is the

6    second, adjustment for violence is third, adjustment for

7    bribery is fourth, adjustment for direct involvement is

8    fifth, is there any way to estimate which, if any of these,

9    would take up the lion's share of this testimony or would it

10   be pretty equally divided?

11           MS. GOLDBARG:  Yeah.

12           Your Honor, we've tried to present the testimony

13   from these witnesses in a way that provides a context for

14   the how the witness knows the information, at the same time,

15   explaining the basis for this information.

16           THE COURT:  So you think two hours?

17           MS. GOLDBARG:  We've tried --

18           THE COURT:  Direct.

19           MS. GOLDBARG:  Yes, Your Honor.

20           We've tried to streamline this as much as

21   possible, understanding that this is not the actual trial,

22   but providing sufficient information for the Court to

23   conclude that the government has met its burden with regards

24   to these enhancements.

25           THE COURT:  And there's no dispute on adjustment

1    for acceptance of responsibility of three credits, right?

2             MS. GOLDBARG:  Correct, Your Honor.

3             THE COURT:  All right.

4             So I'm going to budget two hours for direct

5    examination on this.

6             Mr. Balarezo, what would you expect the

7    cross-examination to take on this area?

8             MR. BALAREZO:  Your Honor, I would say at the

9    least, the same, but probably more, given the importance of

10   this topic and the issues that are going to be raised and my

11   ability to be able to effectively cross-examine to determine

12   basis of knowledge and all those other issues that I have to

13   raise.  So I would say --

14            THE COURT:  And you have no objection to using the

15   numbers?

16            MR. BALAREZO:  For the witnesses?

17            THE COURT:  Yeah.

18            MR. BALAREZO:  I do not -- as I said at the bench,

19   I do not have an objection.

20            THE COURT:  Okay.  Very good.

21            So two to three hours?

22            MR. BALAREZO:  At least, Your Honor.  I can't say,

23   but I would venture to guess at least that.

24            THE COURT:  And at this point, as to these four

25   witnesses -- but, well, it's really the first two, the ones

1   that are going to be most directly apposite to these

2   enhancements, you have the discovery materials that you're

3   entitled to prior to the trial, correct?

4           MR. BALAREZO:  The government did provide

5   multiple -- notes from multiple proffer sessions with each

6   of these individuals.  Again, they're heavily redacted.

7   I've gone through it already, and obviously, I would review

8   them again.  And if there's anything that I believe that is

9   further required, I would request that from the government.

10          THE COURT:  All right.

11          The Court will take under advisement the issue of

12  the extent to which a hearing on sentencing in this

13  situation needs to be open to the public, as opposed to with

14  these numbers, as it relates to the witnesses.

15          It looks to me like it's going to take at least

16  two days, something in the -- figuring a typical trial day

17  is five hours, and I certainly don't expect to spend more

18  than five hours in any given day, sounds to me like you have

19  at least, conservatively, seven hours of testimony here.

20  It's going to take two days.

21          And then we're going to need to have time for the

22  arguments, after I make whatever findings I need to make,

23  for the arguments on the -- what's the appropriate sentence.

24  So once I figure out the sentence, I mean the findings, then

25  we can figure out the sentencing range, and then you can

1  make your argument as to where in that range the appropriate

2  sentence is.

3          So that alone, that latter part of it is going to

4  take probably at least half an hour on each side, I would

5  think, maybe more.

6          And then, of course, the defendant is entitled to

7  address the Court, obviously, always is.

8          So it's two full days.

9          What's your availability --

10         MR. BALAREZO:  When is the --

11         THE COURT:  -- for two full days?

12         I mean, I'm out of town for the first two weeks

13  plus in August, I won't be here.  So it's probably going to

14  have to be in late August, at the earliest.

15         MR. BALAREZO:  Your Honor, I'm not available at

16  the end of August.

17         THE COURT:  All right.  Looks like we're into

18  September then, unless you can do it next week.

19         MR. BALAREZO:  Can we consult with Mr. Purpura

20  too, Your Honor?

21         THE COURT:  Take a look at the week of September

22  12th, Counsel.

23         MR. BALAREZO:  I'm available that week,

24  Your Honor.  Monday through Thursday, we're available,

25  Your Honor.

```
 1              THE COURT:  Very good.

 2              Ms. Goldbarg, are you available the week of the

 3    12th?

 4              MS. GOLDBARG:  There's some scheduling issues on

 5    the government's side, but...

 6              THE COURT:  Well, you don't need four lawyers at

 7    the table --

 8              MS. GOLDBARG:  Correct, Your Honor.

 9              THE COURT:  -- I can tell you that.

10              You need your case agents and one lawyer.  That's

11    what you need to have.

12              MS. GOLDBARG:  Yes, Your Honor.

13              THE COURT:  I know you might want to have more.

14              MS. GOLDBARG:  It's not what we want, it's what we

15    need.  Yes, Your Honor.

16              THE COURT:  So I don't need to coordinate four

17    lawyers' schedule.

18              MS. GOLDBARG:  If the Court wants to set --

19    whenever the Court feels that it's necessary to set, the

20    week of the 12th works for the government.  We'll be

21    prepared.

22              THE COURT:  Your agent is available that week,

23    right?

24              MS. GOLDBARG:  Yes, Your Honor.

25              THE COURT:  Very good.
```

1          All right.  14th and 15th.

2          Start at 10:00 on the 14th.

3          Between now and then, I will, obviously, issue

4    whatever order I'm going to issue on the concern I'm taking

5    under advisement, okay?

6          Are there any other issues that you have,

7    Mr. Balarezo, on discovery that I need to be thinking about

8    other than what you've already discussed today?

9          MR. BALAREZO:  I don't have anything else,

10   Your Honor.

11         THE COURT:  All right.

12         MR. BALAREZO:  Thank you.

13         THE COURT:  Are there any other issues the

14   government has that we haven't discussed today?

15         MR. ROSALES:  No, Your Honor.  Thank you.

16         THE COURT:  We'll stand in recess.

17         DEPUTY CLERK:  All rise.

18         This Honorable Court will stand in recess until

19   the return of court.

20         (Proceedings concluded at 4:00 p.m.)

21

22

23

24

25

C E R T I F I C A T E

        I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.


Date: August 7, 2017_____     /S/__William P. Zaremba_____

                                William P. Zaremba, RMR, CRR